## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2013-CA-00405-COA

CHRISTOPHER SHANE HOWELL, WENDY HOWELL, AND BRIDGEFIELD CASUALTY INSURANCE COMPANY, INC.

APPELLANTS

v.

EQUIPMENT, INC.

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/09/2012 |
| TRIAL JUDGE: | HON. JEFF WEILL SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | WALTER C. MORRISON IV |
| | ROGEN K. CHHABRA |
| | DARRYL MOSES GIBBS |
| | ASHLEY L. HENDRICKS |
| ATTORNEYS FOR APPELLEE: | DIANE PRADAT PUMPHREY |
| | NICHOLAS D. GARRARD |
| | CASEY DALE YOUNGER |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | JUDGMENT ENTERED IN FAVOR OF APPELLEE |
| DISPOSITION: | AFFIRMED - 12/02/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND CARLTON, JJ.**

**BARNES, J., FOR THE COURT:**

¶1. Christopher Shane Howell suffered severe bodily injury when the extended platform of the scissor lift on which he had been working fell several feet to the ground. Shane, along with his wife, Wendy Howell, (the Howells) subsequently brought a negligence claim against

the lift's manufacturer, JLG Industries Inc. (JLG), and the lift distributor, Equipment Inc.[1] They alleged that JLG had negligently manufactured the lift and that Equipment Inc., which routinely performed service on the lift for Shane's employer, had negligently maintained the lift and allowed it to be used in an unsafe condition.

¶2. After a jury trial, a verdict was rendered in favor of the defendant, Equipment Inc.[2] The Howells filed a motion for a new trial or, in the alternative, a judgment notwithstanding the verdict (JNOV), which was denied by the Hinds County Circuit Court. The Howells now appeal. Finding no error, we affirm.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

¶3. On January 29, 2010, Shane was employed as a laborer at a jobsite in Ridgeland, Mississippi, when he fell approximately twelve to fifteen feet from the elevated platform of a JLG CM2546 scissor lift, struck his head on the ground, and suffered broken ribs, an injury to his shoulder, facial fractures, and brain injury.[3] The lift is an aerial work platform that extends vertically, unfolding into an "X" pattern. The main platform contains an extending "bridge" that allows the user to gain closer access to the work area. Shane was working on

---

[1] Bridgefield Casualty Insurance Company (Bridgefield), a workers' compensation carrier, intervened in the suit to protect its subrogation interest. According to the record, as of October 1, 2012, Bridgefield had paid "workers' compensation indemnity benefits in an amount exceeding $55,901.04 and medical benefits in an amount exceeding $199,621.95." Howell's claim was still open at that time, and he continued to receive benefits. On appeal, Bridgefield has filed an appearance as an intervenor.

[2] The Howells settled their claim against JLG prior to trial.

[3] Although Shane's injuries were very serious, he has recovered, to a degree, after extensive rehabilitation. It was noted through medical testimony that Shane is at risk for seizures and will continue to need medication for that medical issue for the foreseeable future.

2

this extended platform when it collapsed and landed on top of him.

¶4.     The scissor lift manufactured by JLG had been purchased by Equipment Inc., which later sold the lift to Bates Drywall, Shane's employer, in 1993.  Equipment Inc., however, continued to perform service maintenance and "annual" inspections of the scissor lift for Bates.  (The term "annual" is in quotes because, although Equipment Inc. had performed ongoing service on the scissor lift since 1997, documentation shows that complete inspections of the lift were only performed in September 1998, March 2000, June 2003, January 2008, and June 2009.)  On January 28, 2010, the day prior to Shane's accident, an employee of Equipment Inc., Hugh Boykin, had conducted a service call for the lift in question to address a steering problem.

¶5.     As stated, the Howells filed a negligence complaint against JLG and Equipment Inc.  The basis of the Howells' complaint against Equipment Inc. was the lack of a weight-capacity decal indicating the maximum weight limit for the platform extension (250 pounds).  They contended that Boykin should have noted the decal was missing when he came out for the service call and informed Bates Drywall that the lift was unsafe for use.  They also argued that "C-channels" on the platform were bent, indicating another potential safety issue.

¶6.     After a jury trial, a verdict was entered in favor of Equipment Inc.  The circuit court subsequently denied the Howells' motion for a new trial or, in the alternative, a JNOV, and they filed an appeal, which was deflected to this Court.  Finding that the verdict is not against the overwhelming weight of the evidence and that the circuit court did not abuse its discretion in the giving of certain jury instructions, we affirm.

**DISCUSSION**

3

**I.** **Whether the circuit court erred in denying the Howells' motion for a new trial or, in the alternative, their motion for a JNOV.**

¶7.     The Howells argue that the circuit court erred in denying their motion for a new trial, in which they argued that the jury's verdict was against the overwhelming weight of the evidence.

> A motion for a new trial challenges the weight of the evidence. *Bush v. State,* 895 So. 2d 836, 844 (¶18) (Miss. 2005). When reviewing the denial of a motion for a new trial, "we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.* (citing *Herring v. State,* 691 So. 2d 948, 957 (Miss. 1997)). Furthermore, "the evidence should be weighed in the light most favorable to the verdict." *Id.*

*Hathaway v. Lewis*, 114 So. 3d 783, 786 (¶7) (Miss. Ct. App. 2013). Alternatively, the Howells contend the circuit court should have granted their motion for a JNOV because the evidence was legally insufficient to support a verdict for Equipment Inc. "A motion for a JNOV 'tests the legal sufficiency of the evidence supporting the verdict.'" *Fred's Stores of Tenn. Inc. v. Pratt*, 67 So. 3d 820, 824 (¶18) (Miss. Ct. App. 2011) (quoting *Goodwin v. Derryberry Co.*, 553 So. 2d 40, 42 (Miss. 1989)). Evidence is considered "in the light most favorable to the party against whom the motion has been made, disregarding any evidence on the part of the movant, which is conflicting." *Id.* (quoting *Bruner v. Univ. of S. Miss.*, 501 So. 2d 1113, 1116 (Miss. 1987)). "A JNOV is not proper 'if there is credible evidence from which to draw reasonable inferences, supporting the jury's verdict.'" *Id.* (quoting *Bruner*, 501 So. 2d at 1116).

¶8.     The Howells contend that an August 14, 1992 "Distributor Sales and Service Agreement" between JLG and Equipment Inc. (referred to in the agreement as "Distributor")

4

imposed an affirmative duty upon Equipment Inc. to address any safety issues with the machine used by Bates Drywall. The agreement states in part:

> As and to the extent that Distributor becomes aware that any Product is being improperly operated or that any Product requires maintenance or service for its continued safe operation, *Distributor shall notify the owner and user of said Product of such and use its best efforts to have the owner and user of the Product correct the same*.

(Emphasis added). The Howells claim that the evidence showed that Equipment Inc. breached its duties to Shane and Bates Drywall "to make sure unsafe conditions were repaired; to inform its customer when equipment it serviced was not safe for use and should be taken out of service; and to use its best efforts to have the owner and user of the product to correct any problems with the machinery." The day before Shane's accident, Equipment Inc. was contacted by Bates Drywall to correct a steering problem on the scissor lift at the jobsite. Boykin replaced the steering switch and repaired a broken wire in the harness. The Howells argue that Boykin had a duty to do more than just fix the steering problem – that based upon the eighteen-year-old agreement, he should have noted that the weight-capacity sticker for the platform extension was missing and informed Bates Drywall that the lift was dangerous and should be removed from service.[4] To support their argument that the lift was clearly unsafe for use, the Howells point to deposition testimony by Stephen Forgas, a representative for JLG, who stated:

> Well, the machine should not have been in use based on what I saw during my inspection due to lack of maintenance, poor maintenance on the machine, some of the things we already talked about, such as missing capacity placards,

---

[4] The manual for the scissor lift indicates that the weight capacity for the extended platform was 250 pounds. Shane's weight at the time of the accident was approximately 275 pounds.

5

missing parts on the extension deck, damage to the extension deck, damage to other portions of the guardrails, damage to the cable from the control box down to the ground.

¶9. But, as Equipment Inc. notes, it was readily apparent from the evidence presented that there was no formal contract or agreement between Bates Drywall and Equipment Inc. for service. Billy Bates stated that he only "called [Equipment Inc.] when [he] had a problem." His testimony is corroborated by the documented service record of the lift, which indicates complete "annual" inspections had only been conducted five times in a thirteen-year period. Mr. Bates acknowledged as much, stating:

> Sometimes I would have [a lift] worked on and whoever goes out there would say, "Mr. Bates, your inspection, do you want to do it?" "Yes." I'd say, "Yes, do it." And sometimes I would – I don't remember if I got a call from them telling me it was due or not, but I may have at times. I don't know, because I was a paying customer and when they did it, they got paid.

¶10. Moreover, although the Howells claim that Mr. Bates relied on Equipment Inc. to inform him regarding the safety of the lift, he never testified that he was even aware of the August 14, 1992 agreement between JLG and Equipment Inc. The scissor lift had been sold to Bates Drywall in 1993, and Shane's injury occurred in 2010, seventeen years after Bates Drywall acquired the lift. Additionally, the sales manager for Equipment Inc., Bo Butler, asserted in his testimony that he was unaware of the 1992 agreement with JLG.

¶11. Bates Drywall did not ask Boykin to conduct a complete inspection of the lift when he made the repairs on January 28, 2010. In fact, Boykin stated that the workers on the job site were waiting for him to complete his repairs so they could get back to work, as evidenced by the following testimony:

> Q.      . . . Explain to the jury why you didn't run it and check it for proper

6

operation when you did this fix on the steering box.

A. Well, I ran it and operated it from the ground. There was no need to get in it. I mean, they're just standing there waiting on me trying to get through with a job. . . . They couldn't really go anywhere.

And so I got it back in operation and, you know, turned around and asked them – they've got other machines there – "Do you have anything else you need me to check while I'm here?" So I don't get halfway back to the shop and they call, "Oh, yeah, I forgot this," you know. And so just checked and made sure everything was working. They signed the ticket.

. . . .

Q. All right. And you said they were standing there waiting for [the lift], meaning that they were using that machine right before they call you, correct?

A. Yes, sir. It had quit.

Thus, the jury could reasonably infer from the evidence that Bates Drywall wanted the lift put back into service as quickly as possible and did not desire a complete inspection of the lift.

¶12. Additionally, Boykin testified that he noted no dangerous conditions on the lift when conducting the on-site service call. He stated: "I was only called to repair what they called about. I mean, you don't do a complete inspection every time you go to a machine. You walk up there, you look. If you see something that catches your eye, then – you know, you make note of it then." Another service technician for Equipment Inc., Ronnie Watts, testified: "I'm trained to recognize [if a machine is too dangerous to be in service], but I haven't got the authority to take it out of service because I do not own it." Further, the sales manager for Equipment Inc., Butler, stated:

7

> We don't have a blank check, so we can't go spend their money and fix these things without their authorization. And number two, we simply don't own the equipment. It's not ours. So we try and give them as much useful information as we can to – to make a decision on and leave it at that.

As to Forgas's testimony regarding the unsafe condition of the lift, we observe that Forgas additionally noted that it was the *operator's* responsibility to conduct a "walk-around inspection" before operating the machine and acknowledged that he did not examine the machine until over a year after the accident.

¶13.　Furthermore, Equipment Inc. notified Bates Drywall that the decals were missing in its 2009 annual inspection report. According to the August 2008 inspection, which was conducted by Boykin, the weight-capacity decal for the platform extension on the scissor lift was in place. Boykin also told Bates Drywall's foreman, Red Miller, that the rails on the lift were bent down. However, the June 29, 2009 annual inspection report, which was provided to Bates Drywall, noted that the manual and capacity decals were not "in place, secure [and] legible, at both platform and ground stations." Therefore, Bates Drywall was notified that the capacity decals were not in place.

¶14.　Additionally, Mike Pace, the Equipment Inc. service technician who performed the June 2009 inspection, testified that when he inspected the lift, there was no indication that the "C-channels" on the platform extension were bent. Shane even acknowledged in his testimony that, as far as he knew, the "C-channels" were not "messed up" on the day of the accident and that he never saw anything on the lift that would cause him to believe the lift was unsafe.

¶15.　Accordingly, we find that the evidence was legally sufficient to support the verdict

8

and not against the overwhelming weight of the evidence.

**II.     Whether the circuit court erred by giving jury instructions that were not supported by the evidence.**

¶16.    The giving or refusal of jury instructions by a circuit court is reviewed under an abuse-of-discretion standard. *Carson v. State*, 125 So. 3d 104, 105 (¶4) (Miss. Ct. App. 2013) (citing *McInnis v. State,* 61 So. 3d 872, 875 (¶10) (Miss. 2011)). If, when reading the jury instructions together as a whole, "the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Id.* at 105-06 (¶4) (quoting *Maye v. State*, 49 So. 3d 1124, 1129 (¶7) (Miss. 2010)). "Though a defendant has the right to jury instructions that present his theory of the case, an instruction may be refused if it 'incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.'" *Id*. at 106 (¶4) (quoting *Davis v. State,* 18 So. 3d 842, 847 (¶15) (Miss. 2009)).

*A.     Jury Instruction D-24R*

¶17.    The Howells argue that Jury Instruction D-24R, while a correct statement of the law, was not supported by the evidence and "inapplicable in the instant case." The jury instruction stated:

> A superseding cause is an independent and unforeseen act by a third person which follows the defendant's negligence and which is the substantial factor in causing the plaintiff's injuries. A superseding cause becomes the proximate cause for the plaintiff's injuries and the defendant's negligence is a remote cause for which he is not liable.

> Thus[,] if you find from a preponderance of the evidence in this case that Equipment Inc. was negligent in servicing the subject lift, but that an unforeseeable act by Bates Drywall, such as allowing the lift to be overloaded, and/or used by improperly trained employees, followed the plaintiff's injuries, then Equipment Inc. is not liable for the injuries proximately resulting from the superseding cause and your verdict shall be for the defendant, Equipment Inc.

9

Specifically, the Howells argue that it was foreseeable that Bates Drywall would rely on the services of Equipment Inc. to make sure the scissor lift in question was safe; thus, the circuit court erred in the giving of this instruction.

¶18.    "The question of whether an act of negligence is a foreseeable superseding cause requires an examination of the sequence of events leading to the injury." *Lift-All Co. Inc. v. Warner*, 943 So. 2d 12, 17 (¶18) (Miss. 2006) (citing *Eckman v. Moore,* 876 So. 2d 975, 982 (¶18) (Miss. 2004)). "In cases involving the issue of an intervening cause, . . . the original actor will not be absolved of liability because of a supervening cause if his negligence put in motion the agency by or through which injuries were inflicted." *M&M Pipe & Pressure Vessel Fabricators Inc. v. Roberts*, 531 So. 2d 615, 618 (Miss. 1988) (citing *Capitol Tobacco & Specialty Co. v. Runnels,* 221 So. 2d 703, 705 (Miss. 1969)).

¶19.    Equipment Inc. agrees that it was foreseeable Bates Drywall "would rely on Equipment Inc. to perform the work which it hired Equipment Inc. to do on that particular day," which was to fix the steering problem on the lift. But since the accident had nothing to do with the steering issue repaired the day prior to Shane's accident, Equipment Inc. counters that the jury instruction was supported by the evidence, as the injuries resulted from Bates Drywall's "failure to properly inspect and instruct its employees on the proper use and inspection of such equipment" and that "[s]uch negligence on the part of Bates [Drywall] was unforeseeable[.]" It was also unforeseeable to Equipment Inc. that Bates Drywall would have Shane, an employee who exceeded the weight-capacity limit for the platform, working on the scissor lift.

¶20.    We find no error in the giving of this jury instruction. As our supreme court has

10

stated: "[T]he question of superseding intervening cause is so inextricably tied to causation, it is difficult to imagine a circumstance where such issue would not be one for the trier of fact." *O'Cain v. Harvey Freeman & Sons Inc. of Miss.*, 603 So. 2d 824, 830 (Miss. 1991). Furthermore, the jury indicated in the form of the verdict that it found "that Equipment Inc. was not negligent while servicing the aerial lift"; so if there were any potential error in the giving of this jury instruction, it would be considered harmless. *See Lift-All Co.*, 943 So. 2d at 18 (¶21) (finding that "there was no primary act of negligence which could be superceded by a secondary act of negligence").

### B. Jury Instruction D-38

¶21.    At trial, the Howells objected to the circuit court's giving of Jury Instruction D-38, claiming it was an incomplete statement of the law and misled the jury regarding an employer's duty to its employee. The jury instruction read:

> An employer owes its employees the nondelegable duty to provide its employees with a safe place to work. Therefore, if you find that the subject lift was unsafe for use and that its use by Mr. Howell during his employment with Bates Drywall Inc. failed to remedy the unsafe condition of Mr. Howell's workplace, then you must find that Bates Drywall was negligent by breaching its nondelegable duty to Mr. Howell.

The Howells argue that the jury should also have been instructed that the employer was to exercise "reasonable care in his nondelegable duty," and the instruction, as given, implied Bates Drywall was "strictly liable for any actions that occurred as a result of use of the scissor lift."

¶22.    We find no merit to this argument. The jury instruction provided a complete and accurate statement of the law, which is that "an employer owes its employees the

11

nondelegable duty to provide its employees with a safe place to work." *Green v. Allendale Planting Co.*, 954 So. 2d 1032, 1037 (¶12) (Miss. 2007) (quoting *Monroe Cnty. Elec. Power Ass'n v. Pace*, 461 So. 2d 739, 748 (Miss. 1984)). The jury was further instructed that it must find additional factors (i.e., that the lift was unsafe for use and Mr. Bates failed to remedy the unsafe condition) in order to assign any fault to Bates Drywall; therefore, we do not find that the jury instruction imposed a "strict liability" standard. Therefore, we find no abuse of discretion in the giving of Jury Instruction D-38 by the circuit court.

### C. Jury Instruction D-39R

¶23. The Howells also claim that the circuit court erred in giving Jury Instruction D-39R, which addressed the form of verdict, stating:

> Should you find that Equipment Inc. was not negligent while servicing the aerial lift which is the subject of this lawsuit, then you shall return a verdict for Equipment Inc. And your verdict shall be:
>
> "We, the jury, find for the Defendant, Equipment Inc."
>
> If you find for Equipment Inc., you need not proceed further. Simply return the verdict stated above to the Court.
>
> Should you return a verdict for the plaintiffs in this cause, then you must allocate fault to each person or entity whose conduct you find caused the plaintiffs' damages by using the following procedure:
>
> 1. First, determine the total amount of damages, if any, you wish to award to the plaintiffs.
>    $_____ - for past medical expenses, (if any);
>    $_____ - for future medical expenses, (if any);
>    $_____ - for past lost wages, (if any);
>    $_____ - for future lost wages, (if any):
>    $_____ - for past and future pain, suffering, loss of enjoyment of life and other non-economic damages (if any);
>    $_____ - for loss of consortium for Wendy Howell, (if any);

2. If you have determined, under other instructions given to you and based on a preponderance of the evidence, that the plaintiff, Shane Howell, was guilty of negligence which proximately contributed to the events which caused his damages, what percentage of fault do you allocate to Mr. Howell? _____ % fault.

3. If you have determined, under other instructions given to you and based on a preponderance of the evidence, that Mr. Howell's employer, Bates Drywall Inc., is liable for all or a portion of the plaintiff's damages, what percentage of fault do you find should be allocated to Bates Drywall Inc.? _____ % fault.

4. If you have determined, under other instructions given to you and based on a preponderance of the evidence, that Equipment Inc. is liable for all or a portion of the plaintiffs' damages, what percentage of fault do you find should be allocated to Equipment Inc.? _____% fault.

5. The combined total percentages of fault allocated to Christopher Shane Howell, Bates Drywall Inc., and Equipment Inc. **must equal 100 percent**.

Counsel for the Howells argued at trial that its Jury Instruction P-15R was more appropriate and simple because "it logically [went] through the issues and ha[d] the jury decide, first off, whether or not [Equipment Inc.] was negligent." The Howells claim that Jury Instruction D-39R was confusing to the jury because it addressed damages before liability. To support their claim, they note the fact that the jury found Equipment Inc. was not negligent, but still filled out the rest of the verdict form, assessing zero percentage of fault to Equipment Inc., despite the instructions that there was no need to proceed further.

¶24. Mississippi Code Annotated section 11-7-157 (Rev. 2004) states: "No special form of the verdict is required, and where there has been a substantial compliance with the requirements of the law in rendering a verdict, a judgment shall not be arrested or reversed for mere want of form therein.'" "[T]he test of whether a verdict is sufficient as to form 'is

13

whether or not it is an intelligent answer to the issues submitted to the jury and expressed so that the intent of the jury can be understood by the court." *Oliver v. Goodyear Tire & Rubber Co.*, 10 So. 3d 976, 978 (¶7) (Miss. Ct. App. 2009) (quoting *Miss. Valley Gas Co. v. Estate of Walker,* 725 So. 2d 139, 151 (¶45) (Miss. 1998) (overruled on other grounds)).

¶25.    In this instance, the jury's verdict clearly expressed that it did not find Equipment Inc. liable for damages, and its intent was understood by the circuit court. Although the jury did not precisely follow the instructions in rendering the verdict, we find that it substantially complied with the requirements of the law. Accordingly, we find no abuse of discretion in the giving of this jury instruction.

¶26.    **THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**