# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00233-COA

**MARGARET BYRD**                                                           **APPELLANT**

**v.**

**KENNETH STUBBS, M.D.**                                                    **APPELLEE**


DATE OF JUDGMENT:               11/22/2013
TRIAL JUDGE:                    HON. FORREST A. JOHNSON JR.
COURT FROM WHICH APPEALED:      ADAMS COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         F.M. TURNER III
ATTORNEYS FOR APPELLEE:         STUART BRAGG HARMON
                                ROBERT L. JOHNSON III
NATURE OF THE CASE:             CIVIL - MEDICAL MALPRACTICE
TRIAL COURT DISPOSITION:        FINAL JUDGMENT IN FAVOR OF
                                APPELLEE ON MEDICAL MALPRACTICE
                                CLAIM
DISPOSITION:                    AFFIRMED - 09/22/2015
MOTION FOR REHEARING FILED:     09/24/2015: DENIED; AFFIRMED -
                                02/16/2016
MANDATE ISSUED:

    **EN BANC.**

    **WILSON, J., FOR THE COURT:**

### MODIFIED OPINION ON MOTION FOR REHEARING

¶1.     The motion for rehearing is denied, the original opinion is withdrawn, and this opinion is substituted. The only modification to the original opinion is the addition of footnote 2 in paragraph 12.

¶2.     Margaret Byrd appeals a judgment of the Adams County Circuit Court entered on a defense verdict in a medical malpractice case. Byrd argues that the trial judge committed

reversible error by giving a superseding cause instruction that lacked a foundation in the evidence and misstated the law. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. At the time of the events at issue in this lawsuit, Margaret Byrd had been a patient of Dr. Kenneth Stubbs off and on for about fifteen years. In May 2004, at Dr. Stubbs's recommendation, Byrd underwent a diagnostic colonoscopy. Dr. Thomas Weed performed the procedure, diagnosed Byrd with diverticulosis, and reported his findings to Dr. Stubbs. Diverticulosis is a condition where "pouches" form on the wall of the colon. It is common among people over fifty and often produces no symptoms. Byrd's next scheduled appointment with Dr. Stubbs was in about six months, and Dr. Stubbs saw nothing in Dr. Weed's findings to suggest that she needed to return sooner.

¶4. Byrd claims that in early June she began experiencing nausea, diarrhea, and vomiting. She says that her symptoms worsened over the next several weeks, and that she finally went to Natchez Regional Medical Center's emergency room for treatment on July 19. Dr. Ibrahim Seki, the on-duty physician, noted that Byrd was exhibiting an elevated temperature, rapid pulse, abdominal tenderness, abnormal bowel sounds, high white blood cell count, and dehydration. Dr. Seki diagnosed Byrd with acute gastroenteritis—an inflammation of the intestinal tract that can be either viral or bacterial—and he prescribed medication, including an antibiotic, for her diarrhea, abdominal pain, dehydration, and vomiting. Dr. Seki also admitted Byrd to the hospital for treatment under Dr. Stubbs's care.

¶5. In contrast to Byrd's testimony that her condition had been poor and worsening for

2

weeks, Dr. Stubbs testified that when he arrived at the hospital that night, Byrd told him that she had been experiencing symptoms for only two or three days, which she blamed on some oysters she had eaten. She reported being achy but had no severe pain. Dr. Stubbs's testimony was consistent with his own contemporaneous notes, as well as the notes of Dr. Seki and other emergency room personnel. Dr. Stubbs examined Byrd, continued the course of treatment Dr. Seki had prescribed, ordered additional tests, and continued to monitor her vital signs, hydration, and overall condition.

¶6.    Dr. Stubbs's progress notes indicate that Byrd's symptoms abated over the next two days. Her fever, vomiting, and diarrhea ceased. Her creatine and potassium levels normalized, and her white blood cell count also decreased significantly. She was also able to get up and walk around. Though she remained relatively weak, Dr. Stubbs's discharge summary noted that Byrd was feeling much better, was in no pain, and was ready to return home. Accordingly, after a final in-person examination, Dr. Stubbs discharged Byrd from the hospital with instructions to continue antibiotics and fluids and—both to her personally and in her discharge orders—to notify him if she experienced any setbacks. Byrd returned home on July 21.[1]

¶7.    Byrd's symptoms returned, and on July 23 she went back to the emergency room complaining of pain, nausea, and vomiting. Dr. Seki again treated and examined her, and he again prescribed medication for pain and nausea. Dr. Seki discharged Byrd that same day,

---

[1] Byrd disputed some of the preceding facts. However, the issue on appeal is simply whether there was "credible evidence to support the [superseding cause] instruction," *Young v. Guild*, 7 So. 3d 251, 259 (¶23) (Miss. 2009), not the relative weight of that evidence or conflicts in the evidence, which were issues for the jury.

without any additional testing—and, critically, without notifying Dr. Stubbs that Byrd had returned to the hospital. There was no dispute at trial that Dr. Seki's failure to notify Dr. Stubbs of Byrd's return and condition was negligent.

¶8. The next day, July 24, Byrd went to the emergency room yet again with the same complaints of nausea, vomiting, and pain. The on-duty physician, Dr. Martin, noted an elevated pulse, low blood pressure, tender and distended bowels, a high white blood cell count, and significant dehydration. An x-ray showed an ileus, i.e., an obstruction of the bowel. Dr. Martin diagnosed Byrd with acute abdominal pain, an ileus, and sepsis, a potentially life-threatening infection. He notified Dr. Stubbs and ordered an abdominal CT scan, which revealed fluid in Byrd's abdomen and generalized peritonitis.

¶9. Once Dr. Stubbs was informed of Byrd's return to the emergency room, he consulted Dr. Weed, who performed emergency exploratory surgery on Byrd's abdomen that evening. Dr. Weed discovered large amounts of fluids and abscesses and inflammation of the colon. One abscess appeared to have ruptured, which allowed pus and fecal matter to enter her abdominal cavity and caused an infection and peritonitis. Dr. Weed performed a successful high-diverting colostomy to treat these issues. Byrd was hospitalized for thirteen days following her surgery. In November 2004, Byrd's colostomy was reversed. Byrd complains that even after her colostomy was reversed, she has continued to experience pain, diarrhea, and other abdominal problems, although these issues are due primarily, if not entirely, to liver problems unrelated to the events at issue in this case.

¶10. In 2006, Byrd filed suit in the Adams County Circuit Court against Dr. Stubbs, Dr.

4

Seki, and Natchez Regional Medical Center. In 2007, Dr. Seki and the hospital settled the claims against them, and the case eventually was tried on November 5-7, 2013, with Dr. Stubbs as the only remaining defendant. At trial, in addition to the evidence discussed above, Dr. Stubbs testified that if Dr. Seki had called him on July 23—as he had instructed—he could have ordered tests and taken steps that would have prevented the severe condition Byrd presented with the next day. In addition, Byrd's expert, Dr. Arthur Heller, testified that Dr. Seki's failure to call Dr. Stubbs was negligence, and Dr. Heller admitted that if Dr. Seki had called Dr. Stubbs on July 23, Byrd's condition might have been treatable without resort to a colostomy. Finally, Dr. Stubbs's expert, Dr. Vonda Reeves-Darby, testified that Dr. Stubbs provided appropriate and competent care but that there was nothing he could do after Dr. Seki failed to notify him that Byrd's symptoms had recurred. As Dr. Reeves-Darby put it, it was too late, as Dr. Stubbs "couldn't fix what he had no knowledge of."

¶11.    At trial, after Byrd rested her case, Dr. Stubbs moved for a directed verdict. The trial judge agreed that the evidence of negligence was "very skimpy" but concluded that the parties' opposing experts raised a jury question. However, the judge stated that Dr. Seki's undisputed negligence was a bigger and probably "insurmountable" problem for Byrd on the issue of causation. The judge "want[ed] the record to clearly reflect that [he] ha[d] some serious issues with causation," but in an abundance of caution, and given how long the case had been pending, he reserved ruling and allowed the trial to proceed. When Dr. Stubbs renewed his motion at the close of the evidence, the judge again expressed his "grave concerns" about the sufficiency of the evidence as to both negligence and causation but

5

allowed the case to go to the jury while expressly reserving his right to address the issues, if necessary, post-trial. The jury then returned a general verdict in favor of Dr. Stubbs. Byrd filed a motion for a new trial, which was denied, and now appeals.

## ISSUES ON APPEAL

¶12. Byrd raises two interrelated issues on appeal. First, she argues that a superseding cause instruction was not warranted by the evidence. Second, she claims that even if the evidence supported a superseding cause instruction, the instruction given in this case misstated the law.[2] Finding no error, we affirm.

## ANALYSIS

¶13. "The giving or refusal of jury instructions by a circuit court is reviewed under an abuse-of-discretion standard." *Howell v. Equip. Inc.*, 170 So. 3d 592, 599 (¶16) (Miss. Ct. App. 2014). "[T]his Court does not review jury instructions in isolation; rather, they are read as a whole to determine if the jury was properly instructed." *Mitchell v. Barnes*, 96 So. 3d 771, 775 (¶9) (Miss. Ct. App. 2012) (quoting *Burton ex rel. Bradford v. Barnett*, 615 So. 2d 580, 583 (Miss. 1993)). "Defects in specific instructions do not require reversal where all instructions taken as a whole fairly—although not perfectly—announce the applicable primary rules of law." *Id.* (internal quotation marks omitted). "However, if those

---

[2] Byrd raises one issue in her motion for rehearing. She asserts that our original opinion "overlooked a significant issue of law raised in the briefs of the Appellant: Has the doctrine of superseding cause been subsumed by Miss. Code Ann. § 85-5-7?" However, this issue was not raised in Byrd's "briefs." It was raised in one brief—her reply brief. "As it is improper to raise new arguments in a reply brief, the Court is under no obligation or duty to consider such argument." *Paw Paw Island Land Co. v. Issaquena & Warren Ctys. Land Co.*, 51 So. 3d 916, 928 (¶49) (Miss. 2010). Byrd's argument was not "overlooked." It was waived.

instructions do not fairly or adequately instruct the jury, we can and will reverse." *Id.*

¶14.    "When analyzing the grant or refusal of a jury instruction, two questions should be asked:  Does the instruction contain a correct statement of law and is the instruction warranted by the evidence?" *Mitchell*, 96 So. 3d at 775 (¶9) (quoting *Beverly Enters. Inc. v. Reed*, 961 So. 2d 40, 43 (¶8) (Miss. 2007)).  With respect to the latter question, a "defendant is entitled to have jury instructions given which present his theory of the case" when there exists a "foundation in the evidence" for the instructions.  *Coho Resources Inc. v. McCarthy*, 829 So. 2d 1, 23 (¶69) (Miss. 2002) (quoting *Higgins v. State*, 725 So. 2d 220, 223 (Miss. 1998)).  In this case, the challenged superseding cause instruction had a foundation in the evidence and also fairly stated the applicable law.

### I.    Whether the Evidence Supported a Superseding Cause Instruction

¶15.    Byrd argues that the trial judge erred by giving jury instruction 17, which instructed jurors on the concept of a superseding cause as follows:

> You are instructed that a superseding cause is an independent and unforeseen act by a third person which follows the Defendant's actions and which is the substantial factor in causing the plaintiff's injuries.  A superseding cause becomes the proximate cause for the plaintiff's injuries and any actions on the part of the defendant becomes [sic] a remote cause for which he is not liable.
>
> Thus, if you find from a preponderance of the evidence in this case that the subsequent actions by Dr. Seki were a substantial factor in causing the [sic] Ms. Byrd to need surgery and the treatment the [sic] followed her surgery, and thus constitutes a superseding cause; then Dr. Stubbs cannot be held liable for the injuries proximately resulting from the superseding actions of Dr. Seki, and it is your sworn duty to return a verdict in favor of Dr. Stubbs.

¶16.    A superseding cause "is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent

7

negligence is a substantial factor in bringing about." *Causey v. Sanders*, 998 So. 2d 393, 405 (¶38) (Miss. 2008) (quoting *Southland Mgmt. Co. v. Brown ex rel. Brown*, 730 So. 2d 43, 46 (Miss. 1998) (citing Restatement (Second) of Torts § 440 (1965))). The intervening negligence must be "independent" of the original negligence. *Saucier v. Walker*, 203 So. 2d 299, 304 (Miss. 1967). In addition, "[u]nder this theory, the original actor's negligence may be superceded by a subsequent actor's negligence" only "if the subsequent negligence was unforeseeable." *Causey*, 998 So. 2d at 405 (¶38). "[The Supreme] Court has held that, if 'the intervening cause is one which in ordinary human experience is reasonably to be anticipated, or one which the defendant has reason to anticipate under the particular circumstances,' the subsequent actor's negligence is foreseeable and does not break the chain of events between the negligence of the first actor and the injury." *Id.* (quoting *Southland Mgmt. Co.*, 730 So. 2d at 46). The Court has further "stated that 'the question of superseding intervening cause is so inextricably tied to causation, it is difficult to imagine a circumstance where such issue would not be one for the trier of fact.'" *Entrican v. Ming*, 962 So. 2d 28, 36 (¶25) (Miss. 2007) (quoting *O'Cain v. Harvey Freeman & Sons Inc.*, 603 So. 2d 824, 830 (Miss. 1991)); *accord Howell*, 170 So. 3d at 600 (¶20).

¶17. Byrd claims that the jury should not have been instructed on the issue of superseding cause because both Dr. Stubbs's actions and Dr. Seki's actions were proximate causes of her injuries. In support of this claim, Byrd makes two related but analytically distinct arguments that the evidence did not warrant such an instruction. First, Byrd relies on her own expert's testimony to the effect that Dr. Stubbs's negligence during Byrd's first hospitalization set in

8

motion a causal chain that was unaffected by Dr. Seki's subsequent negligence. That is, she argues that Dr. Seki's subsequent negligence was not "independent." Second, Byrd argues that Dr. Seki's negligence cannot be a superseding cause because it was foreseeable. This latter argument relies on Byrd's interpretation of an excerpt of Dr. Stubbs's deposition testimony that was read into evidence at trial. Both arguments fail because they reflect only Byrd's theory of the case and view of the evidence and ignore other permissible inferences that the jury could have drawn from the evidence presented at trial. The jury could have agreed with Byrd, but the evidence also permitted a finding that Dr. Seki's subsequent negligence was an independent and unforeseeable cause of Byrd's injuries. That being the case, the evidence raised a jury question, and the trial judge did not err in giving a superseding cause instruction.

¶18. Byrd's first argument simply ignores contrary evidence. Her own expert admitted that if Dr. Seki had followed Dr. Stubbs's instructions to notify him of any setbacks that Byrd experienced, Dr. Stubbs could have evaluated her worsening symptoms and initiated treatment before her abscess ruptured and before she developed peritonitis, possibly without resort to a colostomy. Dr. Stubbs and Dr. Reeves-Darby testified similarly. The Supreme Court has held that a defendant doctor was entitled to a superseding cause instruction on analogous facts in a medical malpractice case. *See Eckman v. Moore*, 876 So. 2d 975, 979-82 (¶¶11-19) (Miss. 2004). In *Eckman*, the doctor requested a superseding cause instruction based on evidence that nursing personnel at the hospital failed to conduct ongoing neurological checks that he had ordered, coupled with expert testimony that proper checks

9

would have provided him an opportunity for proper care and could have prevented the patient's cardiac arrest, brain damage, and death. *See id.* The plaintiff successfully objected to the instruction at trial, arguing—much as Byrd does in this case— that the nurses' failures were foreseeable and were not independent of the doctor's prior negligence. *See id.*; *see also id.* at 990-92 (¶¶53-58) (Easley, J., dissenting). On appeal, however, the Supreme Court held that because— just as in this case— "both [the doctor] and [the] plaintiff presented evidence that the negligence of the nursing personnel . . . contributed to the [patient's injuries]," the doctor had a "right to have his theory of the case properly presented to the jury," i.e., he had a right to a superseding cause instruction. *Id.* at 982 (¶19) (majority opinion) (holding that failure to give the instruction was reversible error). Just as the nurses' failure to follow orders in *Eckman* raised a jury question on the issue of superseding cause, so too does Dr. Seki's negligent failure to follow orders in this case.

¶19.    Byrd's second argument—that Dr. Seki's negligence was foreseeable—likewise fails because it relies on a disputed view of the evidence that the jury was free to accept or reject. Byrd relies primarily on her interpretation of the following testimony from Dr. Stubbs's deposition, which was read into evidence at trial:

Question:    Is it unusual for an emergency room physician not to contact the attending physician when a patient returns to the hospital within 48 hours of discharge based on your experience?

Answer:    That's hard for me to answer. I mean, it depends on the condition of the patient. So it would just depend on what's going on with the patient at the time. Sometimes they do and sometimes they don't.

Byrd argues that this brief excerpt conclusively demonstrates that Dr. Seki's negligence was

"foreseeable." But Dr. Stubbs argues, and the jury could have found, that this was only a general response to a general question— "it depends." We agree with Dr. Stubbs. There was sufficient evidence for a jury to find that in this *specific* case Dr. Seki's failure to notify Dr. Stubbs that Byrd had returned to the hospital because her symptoms had recurred was an unforeseeable lapse in medical care. Byrd's own expert testified that Dr. Seki violated the standard of care and that he would have expected Dr. Seki to call Dr. Stubbs in this situation. Dr. Stubbs also testified that he expected to be called if Byrd returned to the emergency room, and Byrd's hospital records reflect that Dr. Stubbs should have been called if Byrd experienced problems or setbacks. Finally, Dr. Reeves-Darby testified that Dr. Stubbs was entitled to expect notification of Byrd's return. This was a sufficient foundation for a jury to find that Dr. Seki's negligence was unforeseeable. As such, the issue of superseding cause was for the jury to decide, and the trial judge properly instructed the jury on the issue. *Young*, 7 So. 3d at 259 (¶23) ("A party is entitled to a jury instruction if it concerns a genuine issue of material fact and there is credible evidence to support the instruction.").

¶20.    Thus, we find no error in the trial court's determination that the evidence warranted, and that Dr. Stubbs was entitled to, an instruction on superseding cause. As is often the case when a plaintiff alleges that initial and subsequent acts or omissions by different parties both contributed to bringing about her injuries, *see, e.g.*, *Entrican*, 962 So. 2d at 36 (¶25); *Howell*, 170 So. 3d at 600 (¶20), the evidence presented at trial by both parties created a jury question as to whether the subsequent negligence constituted a superseding cause.

## II.    Whether the Instruction Was a Fair Statement of the Law

11

¶21. In general, there are two distinct types of objections that a party may make to a proposed jury instruction: that it is not warranted by the evidence or that it misstates the law. *Mitchell*, 96 So. 3d at 775 (¶9). At trial, Byrd clearly raised and preserved the former objection, which we have addressed above. However, she did not raise the latter objection at trial. Rather, her argument that the instruction misstated the law surfaced for the first time after trial, in her motion for a new trial. Our Supreme "Court has held that 'when a jury instruction is offered at trial, it is the duty of the opposing party, in order to preserve this point for appeal, to state a contemporaneous objection in specific terms so that the trial court has an opportunity to correct any mistake.'" *Solanki v. Ervin*, 21 So. 3d 552, 561 (¶21) (Miss. 2009) (quoting *Young v. Robinson*, 538 So. 2d 781, 783 (Miss. 1989)). Therefore, "on appeal a party may not argue that an instruction was erroneous for a reason other than the reason assigned on objection to the instruction at trial." *Id.* (quoting *Young*, 538 So. 2d at 783) (alteration omitted). Moreover, "[w]hile certain issues are required to be raised in a motion for new trial, raising objections there which should have been made *at* trial has never been thought to cure the failure to object at the proper time." *Barnett v. State*, 725 So. 2d 797, 801 (¶22) (Miss. 1998) (emphasis in original); *accord Hughes v. State*, 90 So. 3d 613, 623-24 (¶¶25-26) (Miss. 2012); *Smith v. State*, 797 So. 2d 854, 856 (¶7) (Miss. 2001). "Objections to jury instructions made after the jury has returned a verdict and been discharged [are] simply too late." *Barnett*, 725 So. 2d at 801 (¶22). Because Byrd did not object *at trial* to jury instruction 17 as an incorrect statement of the law, that argument is waived on appeal.

¶22. However, even if Byrd had preserved this argument for appeal, jury instruction 17 fairly states applicable law and provides no basis for reversal. A party is entitled to have the jury instructed on its theory of the case, but courts may refuse instructions that incorrectly state the law. *Miss. Valley Silica Co. v. Eastman*, 92 So. 3d 666, 670 (¶16) (Miss. 2012) (explaining that if a proffered instruction on a central issue is supported by the evidence but misstates applicable law, it is the "ultimate responsibility" of the trial judge "to reform and correct the proffered instruction"). Here, Byrd argues that although the first paragraph of jury instruction 17 correctly states the law, the second paragraph improperly allowed the jury to find that Dr. Seki's negligence was a superseding cause even if *both* Dr. Stubbs's (alleged) negligence *and* Dr. Seki's (undisputed) negligence were substantial factors that proximately contributed to Byrd's injuries.

¶23. As noted above, the jury was instructed as follows:

> You are instructed that a superseding cause is an independent and unforeseen act by a third person which follows the Defendant's actions and which is the substantial factor in causing the plaintiff's injuries. A superseding cause becomes the proximate cause for the plaintiff's injuries and any actions on the part of the defendant becomes [sic] a remote cause for which he is not liable.
>
> Thus, if you find from a preponderance of the evidence in this case that the subsequent actions by Dr. Seki were a substantial factor in causing the [sic] Ms. Byrd to need surgery and the treatment the [sic] followed her surgery, and thus constitutes a superseding cause; then Dr. Stubbs cannot be held liable for the injuries proximately resulting from the superseding actions of Dr. Seki, and it is your sworn duty to return a verdict in favor of Dr. Stubbs.

There is no dispute that the first paragraph is a fair and accurate statement of the law. Byrd's argument as to the second paragraph turns on the use of a single word— "a." According to Byrd, by referring to "*a* substantial factor" rather than "*the* substantial factor," the instruction

13

allowed the jury to find that both Dr. Stubbs and Dr. Seki were negligent and proximate causes of Byrd's injuries and yet still absolve Dr. Stubbs of any liability. However, Byrd overlooks that the instruction permitted the jury to find for Dr. Stubbs on this ground only if Dr. Seki's actions or inactions "constitute[d] a superseding cause," a term that was clearly and properly defined in the immediately preceding paragraph. The instruction further explained that Dr. Stubbs could not be held liable for injuries resulting from "the superseding actions of Dr. Seki," reemphasizing the definition of superseding cause.

¶24. Moreover, our Supreme Court previously held that the refusal to give a similar superseding cause instruction was reversible error. In *Eckman*, the defendant's proposed instruction read, in pertinent part:

> Thus, if you find from a preponderance of the evidence in this cause that Dr. Eckman was negligent . . . , but that an independent and unforseen act by a third person . . . followed Dr. Eckman's negligence, if any, and was *a substantial factor* in causing Mr. Moore's neurological injuries and subsequent death, then Dr. Eckman is not liable for the injuries proximately resulting from the superseding cause, and your verdict shall be for the Defendants . . . .

*Eckman*, 876 So. 2d at 980 (¶12) (emphasis added). In the course of holding that "the trial court erred in refusing Dr. Eckman's superseding cause instruction," *id.* at 982 (¶19), the Court specifically stated: "this instruction . . . properly stated the law of superseding cause," *id.* at 980 (¶12). While the primary issue on appeal in *Eckman* was the trial court's refusal to give the instruction, not the correctness of its content, we will take the Supreme Court at its word that the language of the instruction properly stated the law.

¶25. Finally, we note that the superseding cause instruction found in the Mississippi Model Jury Instructions uses the phrase "a substantial factor." The model instruction states in part:

14

Thus, if you find from a preponderance of the evidence in this case that the defendant was negligent . . . , but that an independent and unforeseeable act by a third person . . . followed defendant's negligent acts and was *a substantial factor* in causing the plaintiff's injuries, then defendant is not liable for the injuries proximately resulting from the superseding cause, and your verdict shall be for the defendant.

Miss. Model Jury Instr.: Civil § 15:6 (2012) (emphasis added).[3]

¶26.    Read as a whole, instruction 17 provides no basis for reversal because it fairly states Mississippi law on superseding causes. *Mitchell*, 96 So. 3d at 775 (¶9) (quoting *Burton ex rel. Bradford*, 615 So. 2d at 583). The second paragraph could have reemphasized that the subsequent negligence must be "independent and unforeseeable," as in both the model instruction and the instruction endorsed in *Eckman*. But a jury's verdict will not be reversed just because one instruction could have been drafted better; we do not require such "perfect[ion]." *Mitchell*, 96 So. 3d at 775 (¶9) (quoting *Burton ex rel. Bradford*, 615 So. 2d at 583). Rather, we affirm the jury's verdict and the resulting judgment in favor of Dr. Stubbs not only because this issue was waived (*see supra* ¶20) but also because the "instructions taken as a whole fairly . . . announce the applicable primary rules of law." *Id.* (internal quotation marks omitted).

## CONCLUSION

---

[3] We acknowledge "that the model jury instructions are only guidelines and have not been adopted by [the Supreme] Court." *Baker & McKenzie LLP v. Evans*, 123 So. 3d 387, 408 (¶79) (Miss. 2013); *see also* State of Mississippi Judiciary, Administrative Office of the Courts, Mississippi Model Jury Instructions (2012), *at* http://courts.ms.gov/mmji/mmji.html ("[T]hese model jury instructions . . . are the product of the [Mississippi Model Jury Instructions] Commission members' comprehensive research, study, drafting, and revision over almost four years. However, these model jury instructions have **not** been adopted or approved by the Supreme Court of Mississippi.").

15

¶27.   We find no abuse of discretion in the trial judge's giving of jury instruction 17. Evidence presented by both parties supported the instruction.  And although we find that Byrd waived her challenge to the precise language of the instruction, we also find that it was a fair statement of Mississippi law on the issue.  We therefore affirm.

¶28.   **THE JUDGMENT OF THE ADAMS COUNTY CIRCUIT COURT IS AFFIRMED.   ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

   **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON AND FAIR, JJ., CONCUR.  JAMES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.   GREENLEE, J., NOT PARTICIPATING.**