GRIFFIS, P.J.,
for The Court.
¶ 1. David Barnes filed a lawsuit against Leigh Mitchell for his personal injuries arising from an automobile accident. The jury returned a verdict for Barnes in the amount of $150,000. On appeal, Mitchell argues that the circuit court erred by: (1) failing to instruct the jury on Barnes’s duty to operate his motorcycle at or below the posted speed limit; (2) admitting James Hannah’s expert testimony in the field of accident reconstruction; and (3) admitting Officer Michelle Foster’s expert opinion testimony regarding fault and causation. We find reversible error, and remand for a new trial.
FACTS
¶ 2. On July 11, 2004, Barnes was driving his motorcycle northbound on Old Canton Road. Barnes and Mitchell were involved in a collision in front the Jitney Premier. Prior to the accident, Mitchell’s car was located in the entrance to the Jitney Premier facing west. At this location, Old Canton Road has two northbound lanes, a center turn lane, and two southbound lanes.
¶ 3. Officer Foster, a patrol officer with the Jackson Police Department, was dispatched to the accident scene. She testified that when she arrived, Barnes’s motorcycle was on the opposite side of the road in the southbound lane of Old Canton Road, and Mitchell’s car was near the entrance area of the Jitney Premier. Officer Foster testified that Mitchell was easing out into Old Canton Road when she clipped Barnes’s motorcycle. She also testified that, at the time of the accident, Barnes was not driving improperly and that Barnes’s estimated speed at the time of the accident was thirty miles per hour. Officer Foster did not indicate Mitchell’s speed and did not issue Mitchell a traffic citation for the accident.
¶ 4. Barnes testified he stopped at the red light before the Jitney Premier exit and gas pumps. He testified that he drove through the light when it turned green and then signaled to change lanes. As he was looking to see if the other lane was clear, Mitchell pulled out into the road. Barnes testified that he did not have enough time to stop and avoid hitting Mitchell. Barnes testified he was driving between twenty- *774 five and thirty miles per hour. He also testified that he was driving in between the two northbound lanes when the accident occurred.
¶ 5. James Hannah testified as an expert in accident reconstruction on behalf of Barnes. In forming his expert opinion, Hannah surveyed the accident area and interviewed Officer Foster on September 17, 2005, approximately fourteen months after the accident. Hannah also reviewed photographs of Mitchell’s vehicle, but did not review any photographs of Barnes’s motorcycle. Hannah testified that he had interviewed Barnes about what he remembered of the accident.[1] Hannah estimated the final resting location of the motorcycle and, from that estimation, determined the speed of Barnes’s motorcycle from an estimated friction coefficient calculation. Hannah concluded that Barnes was traveling thirty-miles per hour at the time of the accident.
¶ 6. Mitchell testified that, as she pulled up to the exit of the gas station, she heard Barnes speeding down the street. As Barnes’s motorcycle came close to her car, he lost control of his motorcycle and struck her car while it was stopped. Mitchell testified that, at the time of the accident, Barnes was riding his motorcycle on the back wheel doing a “wheelie.” Mitchell testified she had pulled up to the road to see around the bushes, but her vehicle was not in the road at the time of the accident. Mitchell stated that Barnes hit the edge of her bumper and then rolled off his motorcycle as it flipped.
¶ 7. Several eyewitnesses testified during the trial. Greg Parsons testified Barnes was speeding and driving the motorcycle on one wheel. Parsons testified that the accident occurred when Barnes applied his brakes and lost control of the motorcycle. Lorna Owens also testified that the motorcycle was speeding while on one wheel. Owens testified that when the motorcycle came down from being on one wheel, Barnes lost control of the motorcycle. Owens testified that Officer Foster did not ask her about the accident, and she did not give her statement to the police at the time of the accident. Mike Williams also testified that he saw Barnes on one wheel driving at a high rate of speed at the time of the accident. Williams testified that the accident occurred when Barnes used his brakes, causing him to lose control of the motorcycle and hit Mitchell’s car.
ANALYSIS
1. Whether the circuit court erred in denying Mitchell’s proposed jury instruction D-2 on the speed of Barnes’s motorcycle.
¶ 8. At trial, the circuit court refused Mitchell’s proposed jury instruction D-2, which read:
Under the laws of the State of Mississippi, the operator of a motor vehicle, including a motorcycle, has a duty to operate his vehicle at a speed at or below the posted speed limit. Therefore, if you find from a preponderance of the credible evidence in this case that David Barnes was operating his motorcycle at a speed in excess of the posted speed limit at the time of the accident in question, then David Barnes was guilty of negligence. If you find that David Barnes’ negligence, if any, was the sole proximate cause of the accident in ques *775 tion, then you must return a verdict for the Defendant, Leigh Mitchell.
Mitchell claims the evidence presented throughout the trial supported this jury instruction regarding Barnes’s speed at impact. The circuit court disagreed.
¶ 9. In Burton ex rel. Bradford v. Barnett, 615 So.2d 580, 583 (Miss.1993), the supreme court held:
On appeal, this Court does not review jury instructions in isolation; rather, they are read as a whole to determine if the jury was properly instructed. Defects in specific instructions do not require reversal “where all instructions taken as a whole fairly — although not perfectly — announce the applicable primary rules of law.” However, if those instructions do not fairly or adequately instruct the jury, we can and will reverse.
(Internal citations omitted). “When analyzing the grant or refusal of a jury instruction, two questions should be asked: Does the instruction contain a correct statement of law and is the instruction warranted by the evidence?” Beverly Enters., Inc. v. Reed, 961 So.2d 40, 43 (¶ 8) (Miss.2007).
¶ 10. Here, Mitchell’s proposed jury instruction D-2 was a correct statement of the law. “Driving a vehicle in violation of statutory requirements is negligence per se.” Havard v. State, 800 So.2d 1193, 1198 (¶ 14) (Miss.Ct.App.2001). Mitchell argues that, although a jury instruction was given regarding the duty to maintain control of the vehicle, she was still entitled to an instruction regarding Barnes’s speed at the time of the accident. Indeed, a driver’s duty to maintain the speed limit and control of a vehicle are two separate, distinct duties, and both are grounds for the jury to find fault for the accident. The jury should have been separately instructed on Barnes’s duty with respect to the speed of his motorcycle at the time of the accident. Regarding the proof at trial on Barnes’s speed to support instruction D-2, the following exchange occurred:
Court: ... I’m going to refuse your [instruction] D-2 for — there was no evidence to substantiate it, and I don’t remember anyone talking about — I think they said something about the sign, but anything about a posted speed.
Defense counsel: And, Your Honor, the officer testified about it.
Court: What did she testify the posted speed was?
Defense counsel: 35.
Court: Okay. I don’t think that’s an issue in this case, is it?
Defense counsel: Well, there’s admissions by the plaintiff to his doctors that he was going in excess of the posted speed limit. There’s testimony by witnesses that he was—
Court: I didn’t hear the doctor say that. I didn’t hear the doctor say he was going in excess, and that the plaintiff .testified to him or said to him. He said he saw the nurse first, right?
Defense counsel: It’s documented in the records. And the doctor’s testimony and the records are also in evidence.
Court: ... It’s not in the courtroom, and its not anything that I found that led any credible evidence that anybody was speeding. I just didn’t or that there was a posted speed limit that was being exceeded. And even though you say that, the officer did not indicate that .there was any speeding.
Defense counsel: And there’s obviously • a conflict in the testimony. The officer’s report is in evidence with the speed limit and she testified to that.
*776 ¶ 11. In addition to the testimony of Mitchell, several eyewitnesses (Parsons, Owens and Williams) testified that Barnes was driving at a high rate of speed at the time of the accident. Furthermore, statements in Barnes’s medical records, introduced as evidence on behalf of Barnes, contained conflicting information regarding Barnes’s rate of speed at the time of the accident. We find that there was ample evidence in the trial record to support jury instruction D-2.
¶ 12. Accordingly, we find it was reversible error for the circuit court to refuse instruction D-2.

2. Whether the circuit court erred by admitting expert testimony of James Hannah.

¶ 13. Mitchell argues that it was error to allow James Hannah to testify as an expert witness in accident reconstruction claiming that Hannah’s testimony was not based on sufficient facts or data. Mississippi Rules of Evidence 702 states:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
¶ 14. “Our well-settled standard of review for the admission or suppression of evidence is abuse of discretion.” Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 34 (¶ 4) (Miss.2004) (citing Haggerty v. Foster, 838 So.2d 948, 958 (¶25) (Miss.2002)). The Mississippi Supreme Court has said that “the decision of the trial judge will stand ‘unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion.’ ” Id. (Internal citation omitted).
¶ 15. Under Rule 702, trial “courts are charged with being gatekeepers in evaluating the admissibility of expert testimony.” Watts v. Radiator Specialty Co., 990 So.2d 143, 146 (¶ 7) (Miss.2008) (citing Irby v. Travis, 935 So.2d 884, 912 (¶ 78) (Miss.2006)). Rule 702 “recognizes the ga-tekeeping responsibility of the trial court to determine whether the expert testimony is relevant and reliable.” Kilhullen v. Kan. City S. Ry., 8 So.3d 168, 172 (¶ 9) (Miss.2009) (citing M.R.E. 702 cmt.).
¶ 16. On August 18, 2006, Mitchell filed a motion in limine to exclude Hannah’s expert testimony on the basis that his data was unreliable. On the date of trial, Mitchell requested the circuit court hear her motion to exclude Hannah as an expert witness. The circuit court ruled that the issue of Hannah’s expert testimony should be addressed during trial under cross-examination. Thus, the circuit court did not conduct a Daubert evidentiary hearing on whether Hannah’s testimony was admissible under Rule. 702.
¶ 17. In McLemore, 863 So.2d at 35-42 (¶¶ 6-39), the supreme court conducted an in-depth analysis of the admissibility of expert testimony adopting the modified Daubert standard. The McLemore court stated that “[t]he trial court is vested with a ‘gatekeeping responsibility.’ ” Id. at 36 (¶ 11) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). The trial court must make a ‘preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and ... whether that reasoning and methodology can be applied to the facts in issue.’ ” Id. at 36 (citation *777 omitted); see also Patterson v. Tibbs, 60 So.3d 742, 749 (¶22) (Miss.2011).
 ¶ 18. Here, the circuit court did not make a preliminary assessment of Hannah’s methodology or whether his reasoning and methodology could be applied to the facts in this case. See McLemore, 863 So.2d at 36 (¶ 11). Instead, the circuit court ruled that Hannah’s expert testimony would be subject to cross-examination by Mitchell’s counsel and that his expert opinions were matters for the jury to assess.[2] However, this approach fails to implement the circuit court’s gatekeeping function required by McLemore.
¶ 19. When Hannah was called in Barnes’s case-in-chief, the circuit court did allow Mitchell’s counsel to conduct a proffer of Hannah’s testimony outside the presence of the jury. Hannah’s proffer reflected his expected testimony with respect to his opinions about the cause of the accident.
¶ 20. During the proffer, Hannah admitted that there was no physical evidence to review to determine the final resting point of the two vehicles after the accident. He also testified that he did not know where the point of impact was or where Barnes’s motorcycle came to rest. In determining the point of impact, Hannah relied upon Officer Foster’s recollection, fourteen months after the accident, of the accident scene. At the time of the accident, Officer Foster did not note any physical evidence of the impact, nor did she record any measurements from the scene in the accident report.
¶ 21. Moreover, there were no skid marks, oil spots, gouges, or scratches in the road for Hannah to analyze. Hannah testified that he based his placement of the vehicles on Officer Foster’s recollection and the eyewitnesses’. Hannah testified that he never viewed the motorcycle but was given information pertaining to where the damage was on the motorcycle. Hannah did not indicate where he obtained the information about the motorcycle. Because Officer Foster did not mark any landmarks in her drawing of the accident scent in the accident report, Hannah based his reconstruction of the accident on her visit to the accident site with him more than a year later.
¶22. Hannah also offered an expert opinion regarding the speed Barnes was traveling at the time of the accident. Hannah conceded that in order to determine Barnes’s speed, he needed to know how far the motorcycle traveled from the point of impact with Mitchell’s car to its final resting position. However, Hannah did not know the final resting position, as his calculations were based upon Officer Foster’s recollection. Another essential calculation for Hannah to perform to determine Barnes’s rate of speed is called the “coefficient-of-friction”. This calculation takes into consideration how vehicles interact with different types of surfaces, e.g., asphalt, grass or rocks. In this instance, Hannah used a coefficient of friction calculation to determine how far Barnes’s motorcycle slid on the asphalt *778 after impacting Mitchell’s car. Hannah testified he had little physical evidence to determine the coefficient of friction.
¶ 23. As to this calculation, Hannah testified in his deposition as follows:
Q. All right. So, again, where did you come up with the number of using half of the coefficient of friction.
A. Again, I was trying to give the- benefit of the doubt. I don’t like to go with the extreme. I always play devil’s advocate, because I do accidents for everybody, criminal, civil, both sides, and I always like to come up with numbers that gives everybody the benefit of the doubt.
Q. Is there any scientific basis for using half, or did you just pick a number?
A. Well, I picked a number because this has ... proven to be true over the years, that this actually applies, that it has to be less than this. What I am giving is the absolute number.
¶ 24. The record before this Court reflects that Hannah: (1) did not know the distance the motorcycle traveled after hitting Mitchell’s car; (2) did not know the exact location where the motorcycle came to rest; (3) was given an estimate of between fifty and one hundred feet by Officer Foster of the distance between impact and the motorcycle’s resting place; (4) did not have any physical evidence from the scene of the accident to review; (5) “picked” a coefficient-of-friction number to determine the speed of Barnes’s motorcycle at the time of the accident; (6) did not have photographs of the accident scene; (7) did not inspect Barnes’s motorcycle; (8) relied on the recollections of Officer Foster and other eyewitnesses more than one year after the accident in formulating his expert opinions; and (9) did not record the interviews with Barnes or the other eyewitnesses.
¶ 25. We find the circuit court failed to conduct a Daubert evidentiary hearing on the admissibility Hannah’s testimony as required by McLemore. We further find that Hannah’s expert testimony does not meet the standards for admissibility under Rule 702 and McLemore. Applying a mathematical formula, such as a coefficient of friction, where the underlying facts relied on by the expert are the product of speculation and conjecture and cannot be substantiated with any degree of reliability, does not pass scrutiny under the modified Daubert standard applied in McLe-more.
¶ 26. Therefore, it was error for the circuit court to accept Hannah as an expert and allow him to offer expert testimony regarding the accident.

3. Whether the circuit court erred by allowing Officer Foster to testify regarding fault and, how the accident occurred.

¶ 27. Mitchell argues two assignments of error regarding the testimony of Officer Foster. First, Mitchell argues Officer Foster testified outside of her capacity as a lay witness and offered opinions that qualified as expert testimony. Second, Mitchell argues the circuit court erred by admitting portions of the police records that repeated the opinions of Officer Foster. The standard of review for the trial court’s admission or suppression of evidence is abuse of discretion. Haggerty, 838 So.2d at 958 (¶ 25).
¶ 28. Officer Foster was not designated as an expert witness at trial. Mitchell argues that Barnes’s counsel attempted to elicit expert testimony from Officer Foster based on her training and experience as a police officer. Specifically, Officer Foster indicated that the cause of the accident *779 was due to Mitchell’s “fail[ure] to yield the right-of-way.” Officer Foster further concluded that Barnes’s speed at the time of the accident was thirty miles per hour and that Barnes was not driving improperly.
¶ 29. Barnes argues that Officer Foster reached these conclusions from information that she obtained from Mitchell at the accident scene. Mitchell disputes that she ever spoke with Officer Foster.[3] This disputed fact is not material, however, to Officer Foster’s opinion testimony as to the cause of the accident or Barnes’s speed. It is undisputed that Officer Foster was not present at the time the accident occurred. Thus in order for her to render expert opinion testimony, she must be qualified under Rule 702. See also Roberts v. Grafe Auto Co., 701 So.2d 1093, 1099 (Miss.1997) (holding trial court committed reversible error in allowing the police officer to give expert testimony without first being tendered and accepted as an expert in accident reconstruction). Since Officer Foster was never identified or tendered as an expert witness in accident reconstruction, her opinions are inadmissible under Rule. 702. While Officer Foster’s opinions are not admissible under Rule 702, certain opinion testimony is admissible under Mississippi Rule of Evidence 701 as follows:
If the witness is not testifying as an expert, the witness’s testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to the clear understanding of his testimony or the determination of a fact in issue, and (c), not based on scientific, technical or other specialized knowledge within the scope of Rule 702.
¶ 30. The supreme court has held “Rule 701 opinions are by definition lay opinions and thus require no specialized knowledge, however obtained.” Miss. State Highway Comm’n v. Gilich, 609 So.2d 367, 377 (Miss.1992). The supreme court has further stated: “There is a bright line rule. That is, where, in order to express the opinion, the witness must possess some experience or expertise beyond that of the average, randomly selected adult, it is a [Rule] 702 opinion and not a Rule 701 opinion.” Sample v. State, 643 So.2d 524, 530 (Miss.1994).
¶ 31. Here, Officer Foster was required to possess specialized knowledge to testify about the cause of the accident and the rate of speed of Barnes’s motorcycle at the time of the accident since she was not present at the time of the accident. On the accident report admitted into evidence, Officer Foster drew a diagram depicting the accident, the lanes where the vehicles were located, “ghost vehicles,” and the point of impact of the collision. Officer Foster testified that she wrote the description of the accident in her report. Officer Foster further testified as to the cause of the accident that Mitchell had failed to yield to the right of way, and moreover, that Barnes was not driving improperly, and was traveling thirty miles per hour at the time of the accident.
¶ 32. We find this testimony by Officer Foster is Rule 702 opinion testimony, rather than Rule 701 lay witness testimony. Officer Foster clearly testified based on her knowledge and experience as a police officer investigating accidents and not based on personal observations. “[I]t is clear that a police officer’s testimony as to the cause of the accident, based on train *780 ing, experience in investigation, etc., would be considered accident reconstruction testimony, allowable as expert testimony under Rule 702, if the officer is properly qualified.” Couch v. City of D’Iberville, 656 So.2d 146, 153 (Miss.1995). On remand, Officer Foster may testify as to her opinions if properly qualified and tendered as an expert witness.
¶ 33. Finally, Mitchell argues that the circuit court erred in allowing the portion of Officer Foster’s accident report containing her opinions. We agree. To allow the portion of the accident report containing Rule 702 expert opinions would simply circumvent the proper exclusion of her opinion testimony. Therefore, the portion of the accident report containing Rule 702 opinion testimony is inadmissible unless Officer Foster is qualified as an expert witness under Rule 702.
¶ 34. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE, C.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. RUSSELL, J., DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.

. Hannah testified that he did not take notes or otherwise record his interviews with Barnes and the other eyewitnesses. Thus, Hannah's opinions are based upon his recollection of what Barnes and the eyewitnesses recalled about the accident more than a year after the accident.

. Despite the court's ruling that counsel for Mitchell would be permitted to cross-examine Hannah regarding his expert opinions, the circuit court subsequently limited the cross-examination and instructed Mitchell's counsel on several occasions to move to other lines of questioning, particularly in regard to Hannah's testimony on his coefficient of friction calculations. Thus, Mitchell was deprived of a full cross-examination of Hannah’s opinions. See Denham v. Holmes ex rel. Holmes, 60 So.3d 773, 785 (¶ 37) (Miss.2011) (holding "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.”) (citation omitted).

. The accident report does not reflect that Officer Foster spoke with Mitchell at the accident scene.