# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-01018-COA

**W. NOEL HARRIS, ADMINISTRATOR OF THE ESTATE OF MAXINE MARSHALL HARRIS, DECEASED**                              APPELLANT

v.

**TYKERRIOUS D. DAVIS AND FEDERAL EXPRESS CORPORATION D/B/A FEDEX EXPRESS**                              APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 08/05/2024 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GEORGE F. HOLLOWELL JR. |
| | ALAN L. LANE |
| | SACH D. OLIVER |
| | SAMUEL W. MASON |
| | MONTE ANDREW SHARITS |
| | MATTHEW L. LINDSAY |
| | WILLIAM NOEL HARRIS |
| ATTORNEYS FOR APPELLEES: | DONNA BROWN JACOBS |
| | ARTHUR D. SPRATLIN JR. |
| | KEISHUNNA RANDALL WEBSTER |
| | NICOLE ALISE BROUSSARD |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 03/17/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND LASSITTER ST. PÉ, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Maxine Harris (Maxine) died from injuries she sustained in a motor-vehicle accident. Noel Harris (Harris), Maxine's son and the administrator of her estate, filed suit in the Washington County Circuit Court against Tykerrious Davis and Federal Express Corporation

(FedEx) (collectively, the Appellees), alleging negligence and gross negligence. The trial court found that Harris's expert witness's opinions regarding causation were based on speculation and conjecture and, therefore, struck the expert's report. The trial court also granted summary judgment in favor of the Appellees.

¶2. Harris now appeals from three orders entered by the trial court: (1) the order striking Harris's expert witness's report and opinions, (2) the order granting summary judgment in favor of the Appellees, and (3) the order denying Harris's motion for the trial court to reconsider its previous order limiting discovery.

¶3. After our review, and for the reasons articulated below, we find no error. We therefore affirm the trial court's orders.

**FACTS**

¶4. On September 14, 2017, Maxine pulled out from a stop sign in front of an oncoming van driven by Davis. Maxine was driving a 2007 Toyota Highlander sports utility vehicle, and Davis, a FedEx courier, was operating a 2014 Mercedes-Benz Sprinter van. The vehicles collided, and Maxine eventually died from the injuries she sustained in the accident.

¶5. The accident occurred on South Colorado Street in Greenville, Mississippi. South Colorado Street is a four-lane, north-south roadway with a posted speed limit of 35 miles per hour. There are no stop signs or traffic lights for motorists traveling on South Colorado Street in the area where the accident occurred.

¶6. On the day of the accident, Davis prepared a handwritten statement for his employer, FedEx, detailing his account of the collision. The record also contains Davis's deposition

2

testimony regarding the collision, which was taken on July 11, 2023, nearly six years after the accident. Maxine was unable to give a statement or provide any details about the accident before she died.

¶7.     According to Davis, on the day of the accident, he was making deliveries for FedEx. Davis was driving on Debra Drive and turned left onto South Colorado Street, where he then entered the right northbound lane. At that time, Maxine was stopped at a stop sign on North Medical Park Drive, which is approximately 375 to 395 feet north of Debra Drive. As Davis traveled north on South Colorado Street, Maxine suddenly and unexpectedly pulled out from her stop sign onto South Colorado Street and attempted to cross two lanes of northbound traffic and turn left. Davis hit his brakes and swerved to the left but could not avoid hitting Maxine's vehicle. The parties do not dispute that Maxine had a stop sign and that Davis had the right of way.

¶8.     At his deposition, Davis testified that an unknown female witness at the scene told him that she was behind Maxine at the stop sign and honked her horn, which might have startled Maxine into pulling out onto South Colorado Street. Davis also testified that at the time of the accident, he was driving approximately 30 to 35 miles per hour. Davis explained that based on the short distance between Debra Drive and North Medical Park Drive, he did not believe he could go any faster.

¶9.     Emergency vehicles responded to the scene of the accident. For unknown reasons, the Greenville Police Department did not prepare a contemporaneous accident report, preserve any photographs of the accident scene, or maintain any witness identities or

3

statements. Nearly a year after the accident, Maxine's daughter reported the accident to the police department, and the police department made an incident report. The 2018 incident report states that Maxine suffered a head injury and was unable to provide a statement to the intake officer. The report reflects that the intake officer contacted Davis, who provided a statement. Davis informed the intake officer that he was traveling northbound on South Colorado Street when Maxine pulled out in front of him.

¶10. The record also contains an incident report filed by the Greenville Fire Department. The report indicates that the fire department received the emergency call at approximately 11:23 a.m. and arrived on the scene at approximately 11:29 a.m. Once officers arrived, they began rescue efforts to extricate Maxine from her vehicle. The report states that Davis was traveling northbound on South Colorado Street and that Davis's vehicle T-boned Maxine's vehicle when Maxine pulled out of the Greenville Clinic, turning to travel south.[1]

¶11. On September 8, 2020, nearly three years after the accident, Harris, Maxine's son and the administrator of her estate, filed a negligence suit against the Appellees. Harris asserted claims of simple negligence against Davis, respondeat superior as to FedEx, and negligent hiring, training, retaining, and entrusting by FedEx. Harris amended his complaint to assert gross negligence and punitive damages claims against FedEx.

¶12. On September 20, 2022, the trial court granted the Appellees' motion for a protective order limiting discovery, with instructions that discovery would first proceed on the issue of liability, if any, for Davis's operation of the FedEx van on the day of the accident. The trial

---

[1] The entrance to the Greenville Clinic parking lot is on North Medical Drive.

4

court explained that it granted the motion to prevent undue burden and expense to the parties.

¶13.    The parties continued with discovery on the issues of whether Davis was negligent and whether any such negligence proximately caused the accident.  The record shows that little evidence was available regarding the motor-vehicle accident.  Harris failed to preserve Maxine's vehicle or to document the scene.  As stated, the Greenville Police Department (for unknown reasons) failed to prepare an accident report.  Only three or four photographs exist of the subject vehicles at the scene of the accident.  The record contains a diagram and handwritten statement, both made by Davis on the date of the accident, depicting Davis's account of the accident.

¶14.    On October 27, 2023, more than six years after the accident, Harris produced an expert report from Ben Smith, an accident reconstructionist.  In the report, Smith opined as follows:  (1) Davis was traveling 52.9 miles per hour at impact; or (2) if Davis braked and swerved (as he testified), then Davis was going closer to 65 miles per hour at impact; (3) Davis's testimony that he was traveling at or below 35 miles per hour was simply not possible; and (4) Davis's excessive speed was the sole proximate cause of the accident.

¶15.    Harris then filed his motion asking the trial court to reconsider its ruling on the issue of FedEx's liability.  In the motion, Harris argued that the discovery conducted to date had produced evidence sufficient to support a prima facie case of negligence stemming from Davis's operation of the FedEx van on the date of the accident.  Harris accordingly asked the trial court to allow discovery to go forward on Harris's claims of negligence and gross negligence against FedEx.  In support of his motion, Harris attached Smith's October 27,

5

2023 expert report. The expert report contained two photographs depicting the FedEx van at the accident scene that had not been previously produced to the Appellees. In his report, Smith stated that the photographs were used to determine the final rest position for the vehicles.

¶16. The Appellees filed an opposing motion and argued that Smith's expert report disregarded Davis's deposition testimony and instead relied on a "speculative theory of liability." The Appellees provided a report from their own accident reconstruction expert, Tim Corbitt, and explained that Corbitt had conducted a series of independent tests that "debunk[ed]" the report from Harris's expert.

¶17. In his expert report, Corbitt stated that he tested the acceleration of similar Mercedes-Benz Sprinter vans containing the same engine as Davis's van. Corbitt set forth his findings and the mathematical formulas he used to calculate the speeds of Maxine's vehicle and Davis's van. Corbitt concluded that based on acceleration calculations and actual vehicle acceleration testing done at the location of the collision, "it is simply not possible" for Davis's van to achieve "anything near" the speeds Smith provided in his report. Corbitt also opined that Maxine is the sole and proximate cause of this collision because she "failed to yield the right-of-way from her position of rest at the stop sign to the approaching [FedEx van], pulling out in front of Mr. Davis when his vehicle was in such close proximity to the intersection to be a hazard to [Maxine] to do so." Finally, the Appellees claimed that Harris presented "no exceptional or compelling circumstances entitling Harris to relief under [Mississippi] Rule [of Civil Procedure] 60(b)."

6

¶18. In response to Smith's opinion about the final rest position of the FedEx van, the Appellees provided an affidavit from Davis dated February 16, 2024. In the affidavit, Davis stated that the post-accident photographs relied on by Smith, which showed the van at rest in the right southbound lane facing north, did not accurately depict the final rest position of the van. Davis explained that the van came to rest in the left northbound lane (where the accident occurred) and sometime after the accident, someone moved the van to the southbound lane to clear a travel lane for traffic. Davis stated that he was not sure if the tow truck driver or a police officer moved the van.

¶19. On April 26, 2024, the Appellees filed a motion to strike Smith's expert report, arguing, among other things, that the report wholly ignored and contradicted Davis's hand-written statement and diagram drawing made on the day of the accident as well as his deposition testimony. The Appellees asserted that Smith's opinion was based on insufficient underlying facts and data, which rendered the opinion unreliable, unsupported, untested, and impossible. The Appellees also claimed that Smith "lacked even the most basic facts and underlying data typically relied upon by accident reconstructionists, requiring him to make an unacceptable number of assumptions, yet proceeded to render an opinion on [Davis's] speed six years after the fact." The Appellees further argued that in determining that Davis was the sole proximate cause of the accident due to his speeding, Smith failed to acknowledge that Maxine pulled out in front of the oncoming FedEx van from her stop sign. The Appellees asserted that Smith made no attempt to explain why the speeding was the cause of the accident.

¶20. A few days later, the Appellees also filed a motion for summary judgment. In the motion, the Appellees submitted that because Harris represented to the trial court that he had "established his burden and has sufficient evidence establishing a prima facie case of liability," the motion for summary judgment "is ripe for adjudication." The Appellees argued that they were entitled to summary judgment for the following reasons: Harris produced no evidence that Davis breached any duty, much less that he breached the applicable duty of reasonable care; Smith's expert report failed to create a genuine issue of material fact; the opinions and conclusions in Smith's expert report should not be accepted by the trial court because they are untested, unreliable, and hypothetical opinions unsupported by data; the evidence shows that Maxine's negligence was the sole proximate cause of the accident and that Davis's actions did not cause the collision; and Harris's claims against FedEx cannot exist absent a showing of Davis's negligence.

¶21. Harris filed opposing motions to the Appellees' motions to strike his expert and for summary judgment. In his response to the motion to strike his expert, Harris attached a supplemental expert report by Smith and disclosed two new witnesses for the first time: (1) Harris himself, who stated he was on the scene of the accident within minutes of its occurrence, and (2) Larry Moore, an auto-body repairman who repaired the Mercedes-Benz Sprinter van following the accident. In his response opposing summary judgment, Harris maintained that he had produced sufficient evidence to support a prima facie case of liability and requested that the trial court enlarge the scope of discovery to include Harris's gross negligence claims against FedEx.

8

¶22. After a hearing, the trial court entered orders on all three motions. The trial court granted the Appellees' motion to strike the expert reports and opinions after finding that Smith's report and opinions fail to meet the requirements of Mississippi Rule of Evidence 702 and *Daubert*[2] for admissibility. The trial court also found that Smith's report should be excluded under Mississippi Rule of Evidence 403, because any probative value of admitting the report was outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or waste of time.

¶23. The trial court also granted the Appellees' motion for summary judgment. The trial court found, after viewing the evidence in the light most favorable to Harris, that Harris "failed to produce sufficient, competent, or supportive evidence of significant and probative value to demonstrate Davis breached the established standard of care" or that such breach proximately caused the accident and injuries. Based on the trial court's grant of the Appellees' motions, the trial court denied Harris's motion to reconsider.

¶24. Harris now appeals from all three orders.

## DISCUSSION

### I. Order Striking Expert Report and Opinions

¶25. Harris argues that the trial court erred by excluding Smith's expert report and opinions. Harris submits that Smith properly relied on sufficient facts and data to make his calculations, used reliable principles and methods, and performed a reliable application to the principles and methods to the known facts of the case. Harris therefore maintains that

---

[2] *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 587 (1993).

Smith's qualifications and opinions satisfy the requirements of Rule 702.

¶26.   We review a trial court's decision to admit or exclude expert testimony for an abuse of discretion.  *Thompson v. Holliman*, 283 So. 3d 718, 721 (¶10) (Miss. 2019).  The admission of expert testimony is within the sound discretion of the trial judge; therefore, the trial judge's decision will stand unless "the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion."  *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 34 (¶4) (Miss. 2003).

¶27.   "Under Rule 702, trial courts are charged with being gatekeepers in evaluating the admissibility of expert testimony."  *Mitchell v. Barnes*, 96 So. 3d 771, 776 (¶15) (Miss. Ct. App. 2012).  The trial court, as gatekeeper, must determine "whether the expert testimony rests on a reliable foundation and is relevant to the matter."  *Worthy v. McNair*, 37 So. 3d 609, 615 (¶16) (Miss. 2010).

¶28.   Regarding accident-reconstruction experts, the Mississippi Supreme Court has clarified that these experts "are permitted to give their opinions on how an accident happened, the point of impact, the angle of travel, the responsibility of the parties involved or the interpretation of photographs; however, the trial judge has the discretion to determine the admissibility and reliability of that expert witness testimony."  *Thompson*, 283 So. 3d at 725 (¶27).  Here, the parties do not dispute Smith's qualifications as an expert witness.  *See Delta Reg'l Med. Ctr. v. Taylor*, 112 So. 3d 11, 26 (¶44) (Miss. Ct. App. 2012) ("Qualification of the expert and the reliability of the expert's testimony are separate questions.").  Rather, Harris's argument on appeal is that the trial court erred in determining

10

that Smith's expert report and opinions were unreliable.

¶29. In determining the reliability of the expert's opinions, Rule 702 provides that

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: . . . [(1)] the testimony is based on sufficient facts or data; [(2)] the testimony is the product of reliable principles and methods; and [(3)] the expert has reliably applied the principles and methods to the facts of the case.

*Id.* We recognize that "an expert's opinion is reliable if it is grounded in 'the methods and procedures of science, not merely his subjective beliefs or unsupported speculation.'" *Fields v. Gulf Publ'g Co.*, 284 So. 3d 876, 883 (¶17) (Miss. Ct. App. 2019) (quoting *McLemore*, 863 So. 2d at 36 (¶11)).

¶30. "Ultimately, if an expert's testimony survives the threshold scrutiny under Rule 702, it is subject to further review under Rule 403." *Denham v. Holmes ex rel. Holmes*, 60 So. 3d 773, 784 (¶38) (Miss. 2011). "[E]xpert evidence can be both powerful and quite misleading[,] [and a] . . . lack of reliable support may render expert testimony more prejudicial than probative under Rule 403." *Id.* (citations and internal quotation marks omitted).

¶31. In the present case, Smith provided his expert report detailing his opinions regarding the September 2017 accident. Smith stated that in preparing his report, he reviewed the following documents and evidence: the incident report filed with the Greenville Police Department nearly a year after the accident; the Greenville Fire Department's fire-rescue report; four on-scene photographs; eleven post-crash photographs; a National Highway Traffic Safety Administration crash overview summary; geographical, astronomical, and

weather history research of the crash site; specification research and vehicle identification number (VIN) verification of a 2007 Toyota Highlander; specification research and VIN verification of a 2002 Mercedes-Benz Sprinter; inspection and aerial mapping of crash site; a vehicle valuation report for a 2007 Toyota Highlander; Davis's deposition; and the Appellees' interrogatory answers and responses to requests for production of documents.

¶32.   Smith explained that he relied on the at-scene photos to determine final rest positions for the vehicles.  He scaled the final rest positions into a 3D drone map created from the documentation collected during Smith's inspection of the crash site.  Smith combined all this information and created a single diagram depicting the approximate pre-crash, impact, and final rest positions of the vehicles.

¶33.   Smith then input the approximate positions of the vehicles at impact and at final rest into a simulation program to determine the parties' pre-impact speed.  Smith explained that the simulation program uses impact and departure angles, vehicle weights, and post-impact speed to arrive at pre-impact speeds.  Smith stated that in order to account for and encompass any "unknowns," he ran a total of 20,000 iterations of the crash and then created a range by adding or subtracting one to three standard deviations from the mean, with the ultimate goal of arriving at a reliable range for impact speeds.

¶34.   Smith calculated that the average result of the 20,000 tests placed the FedEx van at 52.9 miles per hour at impact, with "a one standard deviation" range of 51 to 54 miles per hour, and they placed the Toyota Highlander at 8.2 miles per hour at impact, with "a one standard deviation" range of 5.2 to 11.2 miles per hour.  Smith observed that the posted speed

12

limit on South Colorado Street was 35 miles per hour. Based on the simulations, Smith opined that Davis was driving in excess of the speed limit by an average of 18 miles per hour. Smith further stated that the lowest speed reported from the analysis placed Davis at 49 miles per hour, or 14 miles per hour over the speed limit, and the highest speed from the test is about 57 miles per hour.

¶35. As to Davis's deposition testimony that he braked and swerved into the left lane prior to impact, Smith acknowledged that the lack of documentation of any physical evidence in the right lane and the lack of electronic data made it difficult to quantify the speed Davis lost as he braked and swerved. Smith stated, however, that if Davis's testimony is to be believed, he would have been traveling significantly faster than 51 to 54 miles per hour prior to impact. Smith opined that Davis actually would have been driving closer to a speed of 65 miles per hour to brake and swerve and then have an impact at 51 to 54 miles per hour.

¶36. Based on his analysis, Smith concluded, "Davis's testimony that he was traveling at or below 35 [miles per hour] is simply not possible." Smith explained that "[i]f we assume that Davis swerved laterally 10 to 12 feet (right lane to left lane) from 30 to 35 [miles per hour] while braking with a 0.3 longitudinal braking coefficient we see that the lane change would have resulted in an impact speed of 15 to 20 [miles per hour]." Smith stated that "Davis could not have struck [Maxine] at 15 to 20 [miles per hour], inflicted the crush and frame damage evident in the photos of the vehicles, pushed the Toyota 80 feet in a rotation, and traveled 90 feet also."

¶37. Smith ultimately opined that "Davis's decision to drive at speeds significantly over

13

the speed limit is the sole proximate cause of this collision." Smith then concluded that if Davis had been traveling closer to the posted speed limit, "this incident certainly could have been avoided without any evasive maneuvers whatsoever."

¶38. In their motion to strike Smith's report and opinion, the Appellees asserted that Smith's opinion was based on insufficient underlying facts and data, which rendered the opinion unreliable, unsupported, untested, and impossible. The Appellees also claimed that Smith "lacked even the most basic facts and underlying data typically relied upon by accident reconstructionists, requiring him to make an unacceptable number of assumptions, yet proceeded to render an opinion on [Davis's] speed six years after the fact."

¶39. In response, Smith provided a supplemental report in May 2024 acknowledging the unknown factors and limited evidence regarding the 2017 accident. Smith explained that in the field of accident reconstruction, unknown and uncertain factors are common and expected in most post-crash analysis and reconstruction. Smith stated that in the present case, he performed 20,000 iterations of the 360-degree momentum equation[3] to account for the unknown and uncertain factors that exist due to the limited investigation information obtained at the time of the crash. Smith admitted that certain factors, such as any braking or evasive action by Davis, were uncertain. However, he maintained that a reliable range can be known based on the sheer volume of calculations performed.

¶40. Regarding the final rest position of the FedEx van, Smith acknowledged Davis's

---

[3] Smith explained that the method he used to arrive at his conclusions is a 360-degree momentum analysis in conjunction with what is referred to as the Monte Carlo method. Smith provided this equation in his report.

14

affidavit suggesting that someone moved the van after the accident and prior to the at-scene photographs being taken; however, Smith stated that based on the photographs depicting the condition of the van after impact and Larry Moore's affidavit confirming the post-crash mechanical damage, "[his] opinions related to the final resting position of the van remain unchanged."

¶41.   After Smith issued his first expert report, a dispute arose between the parties as to Davis's route prior to the accident.  Smith addressed this dispute in his supplemental report, acknowledging that his original calculations did not rely upon the distance between Debra Drive and the area of impact for the crash.  Smith instead relied on the documented delivery evidence from the date of the crash produced by FedEx that showed Davis's last delivery prior to the crash was made to 1693 South Colorado Street.  Smith opined that the distance from 1693 South Colorado Street to the point of impact (approximately 2,223 feet with no stop signs or traffic-signal-controlled intersections) "is more than adequate" for Davis to attain the speeds produced by Smith's calculations, the resulting damage to both vehicles, the post-crash travel distances, and the documented final rest positions.  Smith also cited an 2014 Mercedes-Benz Sprinter acceleration test, which he provided in his supplemental report, and further opined that if Davis was traveling from 1693 South Colorado Street, the FedEx van "could have easily achieved the speed range for impact from my original report."

¶42.   In its order granting the Appellees' motion to strike Smith's report and opinions, the trial court determined that Smith's report and opinions were unreliable and therefore "do not pass muster" under Rule 702, *Daubert*, or Rule 403.  The trial court found that based on the

15

minimal known facts surrounding the collision, "Smith has no choice but to speculate and assume multiple key points." The trial court noted that Smith acknowledged the "unknown" and "uncertain" factors in the collision, such as any braking and evasive action by Davis, the actual area of impact in the roadway, and the position, location, and speed of the vehicles at impact. The trial court further found that Smith failed to reference any possible evasive action taken by Maxine. Regarding the parties' dispute as to Davis's route prior to the collision, the trial court found Smith's efforts to ignore Davis's statement, diagram, and deposition testimony detailing his route to be speculative and unreliable.

¶43. Citing Rule 702(d), the trial court determined that the lack of specific, reliable facts and data from the accident left the trial court without a way to assess whether Smith's opinions are based in sound methodology and reliably applied to the facts of this case. The trial court held that Smith's opinions, set forth as a "reliable range" based on "unknown and/or uncertain factors," included too many assumptions and resulted in speculation and conjecture, as opposed to sufficient facts or data. The trial court explained that it is not required "to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." (Citing *Denham*, 60 So. 3d at 788 (¶53)). The trial court further determined that Smith's "speculative opinions" would not be cured by "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." (Citing *Denham*, 60 So. 3d at 784 (¶37)).

¶44. The trial court held that in addition to failing to meet the admissibility requirements

16

of Rule 702 and *Daubert*, Smith's report and opinions should also be excluded under Rule 403 because any probative value of admitting the report and opinions was outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or waste of time.

¶45.     After our review, we find that the trial court ruled within its discretion to exclude Smith's expert report and opinions.  In a similar case, *Mitchell*, 96 So. 3d at 778 (¶25), this Court reversed the trial court's decision to admit the expert testimony of an accident reconstructionist after finding that the testimony did not comply with Rule 702 or *Daubert*. In that case, the plaintiff and defendant were involved in a motor vehicle collision.  At trial, the expert witness offered his opinions regarding the cause of the accident and the speed the plaintiff was traveling at the time of the accident.  On appeal, this Court found the expert's opinions were purely speculative in that the expert witness

> (1) did not know the distance the [plaintiff's] motorcycle traveled after hitting [the defendant's] car; (2) did not know the exact location where the motorcycle came to rest; (3) was given an estimate of between fifty and one hundred feet by [a police officer] of the distance between impact and the motorcycle's resting place; (4) did not have any physical evidence from the scene of the accident to review; (5) "picked" a coefficient-of-friction number to determine the speed of [the plaintiff's] motorcycle at the time of the accident; (6) did not have photographs of the accident scene; (7) did not inspect [the] motorcycle; (8) relied on the recollections of [a police officer] and other eyewitnesses more than one year after the accident in formulating his expert opinions; and (9) did not record the interviews with [the defendant] or the other eyewitnesses.

*Mitchell*, 96 So. 3d at 778 (¶24).

¶46.     In *Denham*, 60 So. 3d at 789 (¶57), the Mississippi Supreme Court affirmed the trial court's exclusion of an expert witness's testimony "that was clearly speculative and based on insufficient data."   In that case, the expert witness, an accident reconstructionist,

17

concluded that the plaintiff's vehicle had not caused an immediate hazard when turning in front of the defendant and that the defendant should have avoided the accident. *Id*. at 787 (¶51). The expert witness based his conclusion on "basic mathematics and the lack of skid marks." *Id*. at 784 (¶39). However, the expert failed to explain why skid marks were necessary to conclude that the plaintiff was not negligent. *Id*. at 787-88 (¶¶52-53). The supreme court ultimately found that an obvious "analytical gap" existed between the data and the expert's conclusions, which rendered the expert's conclusion regarding causation unreliable. *Id*. at (¶54). The supreme court also found that the expert witness's "conclusion regarding whether [the plaintiff] had created an immediate hazard was not based on specialized, technical, or scientific knowledge." *Id*. at 788 (¶55); *See* MRE 702 (requiring "scientific, technical, [or] specialized knowledge").

¶47. In the case before us, the record contains very little physical evidence regarding the accident. Davis was the only eyewitness who was able to provide any information regarding the collision. In his expert report, Smith acknowledged the minimal physical evidence. Additionally, Smith provided his report and opinions more than six years after the accident, and the report reflects that he was not able to inspect the actual vehicles involved in the accident. Smith acknowledged that unknown and uncertain factors existed in this case, such as any braking and evasive action by Davis, but Smith maintained that he could reach "a reliable range" based on the sheer volume of calculations he performed. However, Smith admitted that in calculating the vehicles' speeds, he did not rely upon the distance between Debra Drive and the area of impact for the subject crash. Additionally, in opining that

18

Davis's speed was the proximate cause of the accident, Smith failed to acknowledge that Maxine pulled out in front of Davis.

¶48.    After our review, we find that the trial court did not abuse its discretion in excluding Smith's expert report and opinions.

## II.    Order Granting Summary Judgment

¶49.    Harris next argues that the trial court erred by granting summary judgment in favor of the Appellees.  Harris maintains that because genuine issues of material fact exist in this case—namely, Davis's route leading up to the accident, the final rest position of the FedEx van, and whether Davis's negligence in operating the FedEx van was the proximate cause of Maxine's death—summary judgment is improper.

¶50.    We apply a de novo standard when reviewing a trial court's grant of summary judgment. *Todd v. First Baptist Church of W. Point*, 993 So. 2d 827, 829 (¶9) (Miss. 2008). Pursuant to Mississippi Rule of Civil Procedure 56(c), summary judgment is properly granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to summary judgment as a matter of law."  In this case, the Appellees, as the parties moving for summary judgment, "bear[] the burden of proving that no genuine issue of material fact exists, and the evidence is reviewed in the light most favorable to the nonmoving party." *Rogers v. Barlow Eddy Jenkins P.A.*, 22 So. 3d 1219, 1222 (¶9) (Miss. Ct. App. 2009).  To avoid summary judgment, Harris, as the non-moving party, must establish that a genuine issue of material fact exists concerning one or more of the elements required to prove his claim. "If any triable issues of fact exist, the lower court's decision to grant summary

judgment will be reversed. Otherwise the decision is affirmed." *Williams v. Potter & Sims Foods Inc.*, 226 So. 3d 1265, 1267 (¶6) (Miss. Ct. App. 2017). In meeting this burden, Harris "cannot sit back and rest on the allegations in [his] pleadings." *Dolgencorp LLC v. Payton*, 366 So. 3d 838, 842 (¶13) (Miss. 2023). Rather, he must "produc[e] sufficient evidence of the essential elements of [his] claim at the summary-judgment stage, as [he] would carry the burden of production at trial." *Id*.

¶51. To succeed on his negligence claim, Harris must "prove by a preponderance of the evidence (1) duty, (2) breach of duty, (3) causation, and (4) injury." *Burns v. Gray*, 270 So. 3d 1084, 1088 (¶14) (Miss. Ct. App. 2018) (quoting *Rogers*, 22 So. 3d at 1222 (¶11)). In order to survive summary judgment, Harris "must put on evidence showing that [Davis] breached a duty of care and that the breach proximately caused [Maxine's] injury." *Id*. "Proximate cause requires: (1) cause in fact; and (2) foreseeability." *Id*. "Cause in fact means that the act or omission was a substantial factor in bringing about the injury, and without it the harm would not have occurred." *Id*. We recognize that while "causation is generally a matter for the jury[,] . . . a plaintiff must still produce a genuine issue of material fact regarding causation in order to reach a jury." *Knox v. Mahalitc*, 105 So. 3d 327, 330 (¶12) (Miss. Ct. App. 2011) (citations omitted).

¶52. In the Appellees' motion for summary judgment, they argued that Harris failed to meet his burden of showing that Davis breached any duty, including the duty of reasonable care, and that Harris failed to provide evidence to show that Davis's actions were the proximate cause of the collision that resulted in Maxine's death. In response, Harris argued

that he provided sufficient evidence to establish a prima facie case of Davis's negligence and that he established that genuine issues of material fact exist, including the final rest position of the vehicles, Davis's route prior to the collision, and the speed of the FedEx van at impact.

¶53. The trial court entered a thorough and detailed order granting summary judgment in favor of the Appellees. The trial court explained that after viewing the evidence in the light most favorable to Harris, it found that Harris failed to produce sufficient evidence demonstrating that Davis breached the established standard of care and that such breach proximately caused the accident and Maxine's injuries. The trial court acknowledged the lack of evidence in this case but held that Harris cannot rely on the lack of evidence to defeat summary judgment. The trial court further ruled that because Harris failed to meet his burden and produce summary judgment evidence establishing the essential elements of his negligence claim against Davis, Harris's vicarious liability and gross negligence claims against FedEx must also fail as a matter of law.

¶54. It is undisputed that as motorists, both Davis and Maxine were held to a duty of ordinary, reasonable care. *See Smith v. Minier*, 380 So. 3d 889, 893 (¶14) (Miss. 2024). Because Maxine was stopped at a stop sign prior to the collision, she also had a duty to proceed cautiously through the intersection, yielding to approaching vehicles who had the right of way or were "approaching so closely as to constitute an immediate hazard[.]" Miss. Code Ann. § 63-3-805 (Rev. 2022).

¶55. In Harris's response to the Appellees' motion for summary judgment, Harris cited Mississippi Code Annotated section 63-3-1112 and argued that Davis had a duty of

21

reasonable care to avoid a collision. Harris also attached a vehicle accident report created by FedEx during its internal investigation into the accident. The report states that Davis "failed to anticipate potential hazards on or near the roadway and maintain awareness" and characterized the accident as preventable.

¶56. However, as acknowledged by the trial court, Harris's reliance on section 63-3-1112 is misplaced. Section 63-3-1112 requires that "[E]very driver of a vehicle shall exercise due care to avoid colliding with any pedestrian or any person propelling a human-powered vehicle and shall give an audible signal when necessary and shall exercise proper precaution upon observing any child or any obviously confused, incapacitated or intoxicated person." Miss. Code Ann. § 63-3-1112 (Rev. 2022). This statute is inapplicable to the present case because Maxine was not a pedestrian, nor was she riding a bicycle. Regarding the FedEx internal document determining that the accident was preventable, the trial court recognized the "clear distinction between negligence under Mississippi law and whether an accident was preventable according to internal policies, with the latter being likely to confuse and mislead the jury." (Citing *Curd v. W. Express Inc.*, No. 1:09-CV-610-LG-RHW, 2010 WL 11463258, at *3 (S.D. Miss. Nov. 2, 2010)).

¶57. As to Harris's claims that several genuine issues of material fact exist regarding whether Davis breached his duty, we agree with the trial court's finding that "they all rely on speculation and allege only possibilities of wrongdoing." The record reflects that Davis, the only eyewitness, provided a contemporaneous statement to FedEx on the day of the collision, stating that he had turned left onto South Colorado Street from Debra Drive. Davis

22

also provided deposition testimony and an affidavit stating that he traveled this route for FedEx. Harris attempted to dispute Davis's stated route by relying on a FedEx delivery document showing that the last two deliveries Davis made prior to the collision were on South Colorado Street, with the final pre-collision delivery occurring at 11:16 a.m. Harris also attached an EMS report showing that the emergency call regarding the collision was made at 11:21 a.m. Harris argued that Davis could not have traveled from 1693 South Colorado Street, the last address on his delivery document, through Debra Drive, and to the point of collision in five minutes. As stated, Harris's expert, Smith, relied on the distance from 1693 South Colorado Street to the point of impact in his calculations to assert that Davis was traveling in excess of the speed limit. In his response opposing summary judgment, Harris submitted that the question of whether Davis, "a commercial delivery driver, actually made his way onto Debra Drive in a residential neighborhood where he made no deliveries in the minutes before the collision, is a question for the trier of fact."

¶58. In granting summary judgment, the trial court ruled that the delivery document showing a prior delivery on South Colorado Street is not evidence of Davis's route after that delivery, and the court found that Harris's effort to show one of several alternate routes was hypothetical. The trial court found that Harris's argument that Davis could not have traveled from 1693 South Colorado Street through Debra Drive and to the point of impact in five minutes amounted to "unsupported speculation," stating that "there is absolutely no evidence in the record (after almost seven years) from an expert or otherwise to show any calculations as to time and distance to support such a hypothetical argument."

23

¶59. Additionally, Harris argues that a genuine issue of material fact exists as to the speed Davis was traveling when he hit Maxine's vehicle. In his deposition, Davis testified that at the time of the accident, he was driving approximately 30 to 35 miles per hour, and he explained that based on the short distance between Debra Drive and North Medical Park Drive, he did not believe he could go any faster. Harris relies on Smith's expert report and opinions that conclude Davis was traveling anywhere from 14 to 18 miles per hour over the posted speed limit of 35 miles per hour. However, as discussed above, the trial court struck Smith's report and opinions as unreliable and speculative.

¶60. As stated, to survive summary judgment, Harris had to produce sufficient evidence to create a genuine issue of material fact as to the essential elements of his negligence claim, and the supreme court has held that "[o]ffering speculation and presumption is not enough" to meet this burden. *Dolgencorp*, 366 So. 3d at 843-44 (¶21); *see also Rogers*, 22 So. 3d at 1225 (¶21) ("Summary judgment may not be defeated through expert opinions that are not based on facts but instead are based on a guess, speculation, or conjecture."). After our review, we find that Harris failed to produce sufficient evidence to show that Davis breached an applicable duty.

¶61. For similar reasons, we also find that Harris failed to produce sufficient evidence to show the existence of a genuine issue of material fact as to causation. Harris failed to show that Davis's alleged speeding "was a substantial factor in bringing about the injury, and without it the harm would not have occurred." *Burns*, 270 So. 3d at 1088 (¶14); *see also Utz v. Running & Rolling Trucking Inc.*, 32 So. 3d 450, 466 (¶41) (Miss. 2010) ("When a party

24

is negligent, that negligence must also be the proximate cause of the injury."). As observed by the trial court, Harris's causation argument—that Davis's decision to drive at a speed over the speed limit is the sole proximate cause of the collision—"relies solely on speculative possibilities crafted by his expert." In providing his opinion as to the proximate cause, Smith failed to explain how Davis's alleged speeding proximately caused the accident and Maxine's death and failed to reference or consider any possible evasive action by Maxine. The evidence in the record shows that prior to the collision, Maxine was at a stop sign and therefore had a duty to yield to Davis, who had the right of way. However, Smith failed to consider Maxine's failure to yield the right of way in making his expert opinion as to causation. We have held that when "the evidence shows that it is just as likely that accident might have occurred from causes other than defendant's negligence, the inference that [the defendant's] negligence was the proximate cause [of the injury] may not be drawn." *Soto v. Miss. Exp. R.R. Co.*, 418 So. 3d 569, 576 (¶33) (Miss. Ct. App. 2025) (quoting *Hardin v. Town of Leakesville*, 345 So. 3d 557, 566 (¶41) (Miss. 2022)). Furthermore, the trial court struck Smith's expert report and opinions, and "[w]ithout [Smith's] conclusory statements and speculation, there is no way to make the leap from [Davis's alleged speeding] to the proximate cause of [the collision]." *Rogers*, 22 So. 3d at 1225-26 (¶24). Based on the lack of competent summary judgment evidence in the record before us, we find that "[o]ne can do no more than speculate about causation here, and speculation does not defeat summary judgment." *Joe McGee Constr. Co. Inc. v. Brown-Bowens*, 368 So. 3d 1277, 1281 (¶10) (Miss. 2023).

¶62. Because Harris failed to meet his summary-judgment burden of providing evidence showing that Davis breached his duty of care and that such breach proximately caused the accident and the injuries Maxine alleged, we affirm the trial court's grant of summary judgment.

### III. Order Denying Harris's Motion to Reconsider the Issue of FedEx's Liability

¶63. As stated, the trial court entered an order bifurcating discovery and requiring Harris to first make a prima facie showing of Davis's negligence in operating the FedEx van before the parties could proceed to discovery on Harris's negligence and gross negligence claims against FedEx. Harris filed a motion alleging that he had produced sufficient evidence to make a prima facie showing of Davis's negligence and requesting the trial court to reconsider its previous order limiting discovery and allow Harris to move forward with discovery on his claims of negligence and gross negligence of FedEx.

¶64. After a hearing, the trial court entered an order denying Harris's motion to reconsider. The trial court found that although Harris titled his motion as one for reconsideration, which is commonly analyzed under Mississippi Rule of Civil Procedure 60(b), Harris's motion was not actually a Rule 60(b) motion. The trial court explained that distinguishing between the caption and substance of Harris's motion was unnecessary because Harris failed to make a sufficient showing that Davis negligently operated the FedEx van at the time of the accident. Because Harris failed to provide sufficient, credible evidence to meet his burden of establishing a prima facie case of liability against Davis, the trial court denied Harris's motion to reconsider its order limiting discovery.

26

¶65. Because we find that Harris failed to meet his burden of providing sufficient, credible evidence establishing that Davis was negligent (as discussed above), we find that the trial court did not err in denying Harris's motion to reconsider its order limiting discovery.

## CONCLUSION

¶66. After our review, and for the reasons discussed above, we affirm the trial court's orders.

¶67. **AFFIRMED.**

**BARNES, C.J., LAWRENCE, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. McDONALD AND McCARTY, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WILSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY McDONALD AND McCARTY, JJ.**

**WESTBROOKS, J., CONCURRING IN RESULT ONLY:**

¶68. I reluctantly concur with the result affirming the grant of summary judgment to the Defendants in light of the speculative nature of Harris's proposed expert report. "Generally, questions related to the bases and sources of an expert's opinion affect the weight to be afforded the opinion by the jury, not the admissibility of the opinion." *Funderburk v. Johnson*, 935 So. 2d 1084, 1107-08 (¶71) (Miss. Ct. App. 2006). And of course, the ultimate question of the credibility of an expert's testimony is a question for the jury. *See Barnett v. State*, 401 So. 3d 1014, 1017 (¶13) (Miss. 2025). However, operating as gatekeeper, the trial court first "must ascertain that the proffered testimony is both relevant and reliable, that is, that the testimony will assist the trier of fact." *Miss. Trans. Comm. v. McLemore*, 863 So. 2d 31, 34 (¶4) (Miss. 2003).

¶69. Here, the evidence available to and relied on by the expert was extremely limited. As noted by the trial court, "this is not an issue of credibility, but rather reliability. . . . [T]his case has minimal known facts[, and] . . . as such, [the expert] has no choice but to speculate and assume multiple key points that he defines as unknown and/or uncertain factors[.]" When an expert fails to investigate or is unable to investigate certain things due to a lack of evidence, the expert testimony can be rendered too speculative to survive the Rule 702 and *Daubert* standards. *Mitchell v. Barnes*, 96 So. 3d 771, 778 (¶25) (Miss. Ct. App. 2012).

¶70. In this instance, similar to *Mitchell*, the extremely limited evidence resulted in the use of assumptions to generate speculative results. *See Hubbard ex rel. Hubbard v. McDonald's Corp.*, 41 So. 3d 670, 675 (¶15) (Miss. 2010). Because the issue is one of reliability, not credibility, and in the face of insufficient facts necessary to support the expert's conclusions, I concur that in this particular instance the exclusion of the expert testimony and subsequent grant of summary judgment to Davis and FedEx was proper.

**McDONALD AND McCARTY, JJ., JOIN THIS OPINION IN PART.**